John Cerny, appellant, v. Paxton & Gallagher Company, appellee.

Filed December 17, 1908.   No. 15,862.

1. **Appeal: Reversal.** Where a general verdict is. set aside for errors occurring at the trial, no part of such verdict can be left to stand; but a new trial must be awarded upon all the issues of fact.

2. **Witnesses: Privileged Communications: Waiver.** Where a party voluntarily testifies in open court to conversations between himself and his attorney, he waives the right to have such communications considered as privileged, and the attorney thereupon becomes a competent witness to testify concerning the matters so disclosed by the client.

3. **Principal and Agent: Creditor of Partnership.** Where a creditor seeking to recover the payment of a debt from a partnership asks one partner to consult with his copartner, he does not thereby make the partner with whom he talks his agent, and, if such partner voluntarily makes false statements to his copartner, the creditor is not bound thereby, nor estopped to deny the same.

4. **Fraud: Instructions.** In an action to recover for fraud alleged to have been practiced by a promise made with the secret intention of not performing the same, an instruction that the plaintiff must establish not only that the promise was made, but that the same was made deceitfully with intention to defraud plaintiff, does not impose too great a burden of proof upon the plaintiff when the jury are at the same time told that, in order that the promise shall be deceitfully made, it must appear at the time of making such promise that the defendant had no intention of complying with the same.

5. ——: ——: **Damages.** Where the mortgagee of a stock of goods sold the same in bulk, and the mortgagor brings an action against such mortgagee to recover the difference between the price at which the goods sold and their market value, on the ground that the mortgagee obtained the mortgage by fraudulent promises which he did not intend to perform, it is not error to instruct the jury upon the measure of damages that they should consider the value of the stock if sold in bulk, and not the price at which it might be sold at retail.

Appeal from the district court for Douglas county: George A. Day, Judge. *Affirmed.*

*George W. Cooper* and *Louis J. Piatti,* for appellant.

*T. J. Mahoney* and *J. A. C. Kennedy, contra.*

CALKINS, C.

This was an action to recover the value of a stock of goods mortgaged by plaintiff to defendant, on the ground that the mortgage was obtained by a promise that the defendant would see that the goods brought upon sale a certain price, which promise the defendant fraudulently and deceitfully made with the secret intention of not performing it. The first trial resulted in a verdict and judgment for the plaintiff, which was reversed by this court (78 Neb. 134). The opinion by ALBERT, C., contains a full statement of the facts, which it is unnecessary to repeat. The second trial upon the same issues resulted in a verdict for the defendant, and from a judgment rendered thereon the plaintiff now appeals.

1. A reference to the former opinion will disclose that, while the defendant urged numerous errors, the cause was reversed for an error of the trial judge in an instruction to the jury as to the measure of damages. The order made by this court was that the cause be remanded for further proceedings according to law. It is contended that a trial *de novo* was not necessary to correct said error, and that on the second trial the district court should have submitted to that jury only the question of damages, leaving the former verdict to stand in all other respects. Whatever may be the rule where a case is tried by a court which states its conclusions of law and of fact separately, or to a jury to whom is submitted special findings, the practice has been to regard the setting aside of a general verdict by a jury as necessitating a reexamination of all the questions submitted to the jury in the trial which resulted in such verdict. The statutes regulating the course of procedure do not specifically provide for setting aside a verdict in part. On the con-

trary, the remedy provided for errors committed during a trial, as prescribed by section 314 of the code, is a new trial. We think we may say it is the universal practice for a trial court, upon granting a new trial under said section, to examine all the issues of the case, and that such a practice as setting aside a verdict as to some part of the issues of fact, and submitting such part to another jury, is altogether unknown. When a case brought to this court is sought to be reversed for any of the errors which are specified in section 314 of the code as ground for a new trial, the making of a motion in the district court for such new trial in the time and manner required by the statute is an essential prerequisite to the right of the party appealing to have such error considered in this court. In such cases the appeal is in effect an appeal from the order refusing a new trial. Under section 594 of the code which provides that, when a judgment or final order shall be reversed either in whole or in part in the supreme court, the court reversing the same shall proceed to render such judgment as the court below should have rendered, or remand the cause to the court below for such judgment, it logically follows that, since, when a cause is reversed for any of the errors specified in section 314, the court below should have rendered a judgment awarding a new trial, it is the duty of this court to either render the judgment granting a new trial, or remand the cause to the court below for such judgment.

The plaintiff cites the cases of the *Missouri, K. & T. T. Co. v. Clark*, 60 Neb. 406, and *Colby v. Foxworthy*, 78 Neb. 288, but in neither of the cases so cited was the precise question presented, nor does this case fall within the rule there laid down. Those cases and the cases cited in the majority opinion in *Missouri, K. & T. T. Co. v. Clark*, *supra*, are authority for the rule that after reversal of a judgment for error occurring subsequent to the trial, and where the findings or verdict were not disturbed, there is no necessity for a new trial; that in such a case the court should retrace its steps to the point where the first ma-

terial error occurred, and from that point the trial should progress anew. We are satisfied that where the error preceded the verdict, and the verdict is a general one, there must be a new trial upon all the issues of fact. The plaintiff cites, and quotes largely from the opinion in, the case of *Lisbon v. Lyman,* 49 N. H. 553; and it must be conceded that that case sustains the plaintiff's contention to the extent that this court should have upon the former hearing sent back the case for a new trial upon the one question of the measure of damages. The considerations urged by the writer of the opinion in that case would have carried great weight if addressed to a legislative body having the power to take away from the verdict of the jury its omnibus character and provide for specific findings of the different issues submitted to that body. They fail, however, to convince us that such is the law; and until the nature of the trial by jury is modified, and the character of their verdict is essentially altered, we doubt the beneficent effect of any attempt of the courts to by construction change the law so as to split the verdict of the jury into component parts, and try the several issues by different juries. We therefore must adhere to the rule that, where a general verdict is set aside for errors occurring at the trial, no part of such verdict can be left to stand, but a new trial must be awarded upon all the issues of fact.

2. The plaintiff Frank Cerny, being called as a witness, undertook to explain certain conduct with reference to attempting to borrow money to bid in the goods, which was supposed to be inconsistent with his reliance upon the promise alleged to have been made by the defendant, by saying that he had been told by Mr. John H. Lindale, an attorney at West Point, that the defendant and its attorney would not keep their promise. Lindale was called as a witness, and testified that his acquaintance with Frank Cerny began after the mortgage sale, and that he never told Frank Cerny that he could not rely upon any arrangement made with the defendant's attor-

ney. This evidence was received without objection until after the cross-examination, when the plaintiff moved to strike out the testimony on the ground that it appeared that the relation of attorney and client existed between Frank Cerny and the witness Lindale. The overruling of this motion is assigned as error. We think that, when the plaintiff testified to a conversation between himself and his attorney, he waived the privilege of such attorney, who thereupon became a competent witness to testify concerning the matters already disclosed in open court by his client. Any other rule would enable the client to use as a sword the protection which is awarded him as a shield. *Sovereign Camp, W. O. W., v. Grandon,* 64 Neb. 39; *Hunt v. Blackburn,* 131 U. S. 403.

3. The plaintiff Frank Cerny testified that, before the mortgages were made, he went to Omaha to see Mr. Pierce, the defendant's credit man, who substantially repeated the representations claimed to have been made by Mr. Rich on behalf of the defendant. The plaintiff was permitted to prove by another Cerny that, when Frank returned from Omaha, he talked with his father in the Bohemian language and told him that Mr. Pierce promised that, if the mortgages were given, the property would have to sell for not less than $3,800, and that, if it did not bring that amount, the defendant would bid it in and put the plaintiff in as agent to work out the amount of the mortgage indebtedness, and then turn the remainder over to them.

The plaintiff submitted an instruction to the effect that, if Mr. Pierce requested Frank Cerny, a member of the firm of John Cerny & Son, to return from Omaha to the village of Dodge with Mr. Rich, attorney for defendant, and come to an understanding with John Cerny and have the mortgages executed by him, and that Frank Cerny made these statements and thereby procured John Cerny to consent to the execution of the said mortgages, the defendant would be estopped to deny the authority of Frank Cerny to make such statements, and would be bound by

the same, whether Mr. Pierce had authorized the making of the same or not. This is upon the theory that, if a creditor in seeking to secure the payment of a debt owing by the partnership asks one partner to consult with his copartner, he thereby makes the partner with whom he talks his agent, so that, if such partner makes false statements to his copartner, the creditor is bound by such false statements. The plaintiff in support of this proposition cites the case of *Wise v. Newatney*, 26 Neb. 88. In that case the estoppel was against the party who made the false representations, and it was very properly held that, where one by his words or conduct wilfully causes another to believe in any state of things and induces him to act on that belief so as to alter his own previous condition, the former is concluded from averring against the latter a different state of things. To have given the instruction asked would have enunciated a new and dangerous innovation in the law, and we think the court rightly refused the same.

4. The court gave an instruction in which the jury were told that the plaintiff must establish not only that the alleged promise was made, but that the same was made deceitfully with intent to defraud the plaintiff, and that in this case, in order for the promise or representation to be deceitfully made, it must appear that at the time of making the promise the defendant had no intention of complying with the same. The plaintiff complains that this charge imposed upon him too great a burden, and that it required him not only to prove that the defendant had no intention to perform the promise, but, in addition thereto, that the promise was deceitfully made. Assuming, for the purpose of this case, that, where an intention not to perform a promise is shown, that is sufficient evidence from which the jury may infer that the promise was fraudulently and deceitfully made, there is no error in this instruction, for it informs the jury that a want of intention to comply with the same is evidence that it was deceitfully made. The plaintiff was therefore given the

advantage of the most favorable construction of the rule in that respect.

5. In its instruction concerning the measure of damages, the court told the jury that, "in determining the market value of the stock, you will consider its value if sold in a lump or bulk, and not the price for which it might be sold at retail, and in no event will you fix the market value as exceeding $3,800." One witness had testified that the market value of the goods at the village of Dodge was $4,000, another $4,500, while a third testified that he took an invoice, and that the market value of the goods in a going concern would be the invoice price, $3,912.50, while their value if sold in bulk would be $2,500. The plaintiff contends that the instruction referred to deprived him of all the above evidence except that of the witness who testified that the market value of the property if sold in bulk was $2,500; and that it is inconsistent with the rule laid down in *Maul v. Drexel*, 55 Neb. 446, to the effect that the market value is not what the property is worth solely for the purpose to which it is devoted, but the highest price it will bring for any and all uses to which it is adapted and for which it is available. The charge complained of did not condition the value of the stock of goods upon any particular use, but dealt altogether with the manner in which it was to be sold. The mortgages authorized the sale in bulk, and such would be the natural and ordinary course. It could not be expected that the mortgagees should sell the same at retail and incur the expense necessarily involved. If the conditions surrounding the sale of a stock of goods are such as to attract purchasers who desire to continue the business in that location, they may frequently be worth their invoice price, or even more; but where the conduct of the business has been a failure, and no purchasers can be found who wish the same for the purpose of carrying on the business in that location, it is common knowledge that such a stock is worth much less. In either case the goods may be sold in bulk or as a whole, but the

difference in their market value does not depend upon the manner of the sale. It is fixed by other and external conditions. We therefore conclude that the court did not err in instructing the jury that they were to consider what these goods were worth sold in bulk.

We recommend that the judgment of the district court be affirmed.

FAWCETT and ROOT, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.