DANIEL N. LEAGUE, APPELLANT, V. KAER P. VANICE III,
APPELLEE.

374 N.W.2d 849

Filed October 18, 1985.   No. 84-399.

Terrance A. Poppe of Hecht, Sweet, Alesio & Morrow, P.C., for appellant.

Victor E. Covalt III of Woods, Aitken, Smith, Greer, Overcash & Spangler, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

SHANAHAN, J.

The district court for Lancaster County as an equity court held that six causes of action claimed by Daniel N. League against Kaer P. Vanice III, based on a corporate officer's duty owed a shareholder, were barred by the statute of limitations in Neb. Rev. Stat. § 25-207(4) (Reissue 1979) and also dismissed a seventh and remaining cause of action based on alleged breach of duty by Vanice as League's agent in the sale of the capital stock of Vanice Pontiac-Cadillac, Inc. (VPCI). We affirm in part and in part reverse and remand.

Initially, all capital stock of VPCI, an incorporated automobile dealership conducted in downtown Lincoln at 12th and Q Streets, was owned by Vanice and Motor Holdings Division of General Motors Corporation (Motor Holdings). In their written contract entered August 12, 1960, Vanice and League agreed that League would receive 20 percent of VPCI capital stock as soon as Vanice acquired all the stock owned by Motor Holdings. Vanice was president, a director, and chief executive officer of VPCI in 1960 and maintained such relationships to VPCI until early 1980. As president of VPCI, Vanice received a monthly salary of $3,000 and a bonus, 20 percent of VPCI's annual profits before taxes. Between 1960 and 1964, VPCI paid Vanice dividends of $59,292. This formula for Vanice's compensation never changed. In late 1963 or early 1964 League became a director of VPCI and received an annual director's "fee" of $3,600. On April 13, 1965, Vanice acquired Motor Holdings' stock in VPCI and transferred to League 143.4 shares (20 percent) of VPCI stock.

After 1965 Vanice in his individual or personal capacity acquired real estate and other automobile-related businesses in Lincoln. During 1967, Vanice individually purchased a tract of real estate at 70th and O Streets, a site then near the outskirts of Lincoln. In May 1968 Vanice purchased Mart DoRan and Son body shop and placed the assets in Atlas Acceptance Corporation (Atlas), which was wholly owned by Vanice and which was formed in 1966. VPCI was conducting body shop operations when the DoRan transaction occurred. In 1970 VPCI moved its operations to a part of the tract owned by Vanice at 70th and O Streets and leased the property from

Vanice until the sale of VPCI in 1980. Another part of Vanice's tract was leased to Goodyear Tire & Rubber Company in 1971, and still another part of the tract was sold to a third party in 1972. Also, in 1971 VPCI began to withdraw from the business of leasing automobiles and transferred such business to Atlas so that by 1975 all auto leasing previously conducted by VPCI was assimilated by Atlas. Finally, in 1978 Vanice personally purchased Royal Motors and its real estate.

In the spring of 1979 Vanice telephoned League and suggested a sale of VPCI's capital stock for a "net" price of more than $1 million after satisfying VPCI's corporate debts. In a letter to Vanice on May 29, 1979, League authorized Vanice to negotiate and consummate a sale of VPCI capital stock on condition that "the net purchase price for 100% of the stock in the corporation will be not less than one million dollars." Vanice negotiated a sale to Abram, Ben, Henry, and Julius Misle (Misles). On June 29 Misles, Vanice, and League signed an agreement for Misles' purchase of all VPCI capital stock at a price of $2,086,144, less corporate liabilities of VPCI. On January 4, 1980, Vanice, in his individual capacity and as a representative of VPCI, as well as agent for League, signed an addendum to the June 29, 1979, agreement with Misles, namely, specification of the net amount payable to Vanice and League for their sale of VPCI stock to Misles. From the sale proceeds paid by Misles on January 4, Vanice satisfied VPCI's corporate debts of $1,042,092 and sent League two checks—one for $218,739.95 (20 percent of the net sale price) and another for $8,822.51 as payment of League's proportionate share of accrued interest on the price paid by Misles. League did not dispute the amount of either check but, according to League, cashed both checks "as fast as I could."

League filed a petition on March 5, 1981, and alleged two causes of action against Vanice. One cause of action was based on a breach of Vanice's duty as League's agent in the sale to Misles. In the other cause of action, League alleged a breach of fiduciary duty owed by Vanice, as president of VPCI, to League, the minority shareholder of VPCI. The breach of fiduciary duty related to Vanice's transactions involving Atlas' auto leasing business and body shop, as well as Vanice's real

estate at 70th and O Streets.

Later, in his third amended petition, filed on April 22, 1983, League altered his first cause of action and complained that Vanice had improperly allowed deduction of certain VPCI debts in negotiating and determining the sale price paid by Misles for VPCI's stock. League's third amended petition also alleged six causes of action in addition to the question concerning the sale to Misles, that is, causes of action as follows: second—Vanice, as president of VPCI, violated a fiduciary duty owed League, as a minority shareholder of VPCI, in VPCI's relinquishment of its auto leasing business to Atlas in 1972; third—improper payments of dividends by VPCI to Vanice from 1960 to 1964; fourth—VPCI's payment of excessive compensation to Vanice in 1977, 1978, and 1979; fifth—Vanice's diversion of auto body work from VPCI to Atlas in 1969; sixth—Vanice's transactions involving the real estate at 70th and O Streets; and seventh—Vanice's 1978 acquisition of Royal Motors. League alleged his lack of knowledge regarding the transactions questioned in the second, third, fifth, and seventh causes of action. League again requested an accounting concerning the Misle sale.

Among the 20 affirmative defenses raised in his answer, Vanice responded that League's third amended petition failed to allege sufficient facts to constitute a cause of action and that all causes of action, except the first cause of action directed to the Misle sale, were barred by the statute of limitations.

As authorized by Neb. Rev. Stat. § 25-221 (Reissue 1979), the district court ordered a separate trial regarding causes of action which Vanice claimed were barred by the statute of limitations. At the bifurcated trial on the statute of limitations, League admitted he received and reviewed monthly "accounting statement forms" submitted by VPCI to General Motors. These forms or reports detailed VPCI's operations and financial condition. VPCI's withdrawal from leasing operations in 1972 and payment of dividends from 1960 to 1964 were reflected in the statements VPCI sent to General Motors.

League testified that shortly after Vanice's acquisition of the DoRan body shop—sometime "in the early '60's"—Vanice told him about the purchase of the body shop. League was not

concerned about Vanice's purchase of the body shop, because "[t]he impression I had, it wasn't doing very much volume . . . ." League also testified he knew in 1979 that Vanice had purchased Royal Motors. Concerning Vanice's compensation paid by VPCI, League testified that as early as 1970 he was concerned with Vanice's salary and bonuses. In his letter sent to Vanice on July 28, 1970, League threatened to sue Vanice for "excessive compensation" paid by VPCI. In his July 28 letter League also, in substance, acknowledged that he knew about Vanice's 1970 acquisition of the 16-acre tract at 70th and O Streets and subsequent sale to VPCI, when he stated:

> Based upon information concerning your activities in acquiring real estate and obtaining zoning thereon, I am concerned about the possibility that you may be planning to engage in a program of self-dealing between yourself, or other corporations controlled by you, and this Corporation concerning the acquisition, ownership, development, rental or other use of certain real estate which you have acquired within the corporate limits of the City of Lincoln . . . .

> Since you are a director, the chief operating officer, and the owner of a majority of the stock in the Corporation, I intend to scrutinize all transactions between yourself and the Corporation to the end that nothing is done to the detriment of myself and any other minority shareholder.

League also acknowledged that in 1979 he had found out "about Royal Motors" and Vanice. VPCI neglected to hold any annual meeting of directors or shareholders.

Over League's objection, Charles Wright, an attorney who represented League during 1970, testified he had informed League that Vanice "has embarked on a course of acquiring real estate which may hereafter be purchased with corporate funds or leased to the corporation [by Vanice]." Wright also testified that the real estate mentioned was Vanice's land at 70th and O Streets which had come to Wright's attention in the course of Vanice's efforts to obtain suitable zoning for use of the tract in an automobile dealership. Wright further testified that, on occasions in 1970, League considered filing suit on account of Vanice's apparent self-dealing with VPCI, but ultimately

withheld suit because "there wasn't a lot of gravy on the table to be litigated."

Upon conclusion of the trial on the issue of the statute of limitations, the trial court held that six causes of action, that is, all except the cause of action based on the Misle sale, were barred by the statute of limitations contained in § 25-207(4), which provides: "The following actions can only be brought within four years: . . . (4) an action for relief on the ground of fraud, but the cause of action in such case shall not be deemed to have accrued until the discovery of the fraud . . . ."

At a subsequent hearing on League's first cause of action (Misle sale), Vanice testified he had explained to League that VPCI's debts would be satisfied from the purchase price paid by Misles and that Misles were not assuming any of VPCI's liabilities in connection with the sale of VPCI's capital stock.

On May 29, 1979, League met with Vanice and the Misles at League's home in Overland Park, Kansas. At this meeting Vanice explained and demonstrated to League, with the aid of notes on a "yellow sheet of paper," that there were certain debts to be paid from the gross proceeds of sale but that, after such deductions, the net purchase price for VPCI stock would be more than $1 million. League testified about that May 29 meeting:

> [Vanice] had a yellow sheet of paper similar to what you have there and he showed at the top of it two million something that he was to get for the stock and I actually thought at the time it included the land and buildings. That's how much I knew about what was going on, that the whole deal was a two million something dollar deal. Then he started deducting from that figure certain items and he came down finally with the figure that showed — I don't remember what it was now. I wasn't paying too much attention to it.

Abram Misle testified that Misles were not assuming any of VPCI's liabilities and that VPCI's debts had to be paid from the sale proceeds at the time of closing.

A contract for the sale of VPCI, which outlined the representations Vanice made to League at the May 29 meeting, was signed by the parties on June 29, 1979. An addendum dated

October 5, 1979, relating to payment and transfer of stock was agreed to by the parties. In a telephone conference with Vanice on January 3, 1980, League agreed to a second addendum to the June 29, 1979, agreement, that is, a provision for the deduction of certain corporate debts to be deducted and paid from the sale proceeds, including $186,000 as the "[f]ull and complete amount of any and all setoffs, claims, charge-backs, etc., by Buyer against Sellers . . . ." The parties stipulated that the following were VPCI's debts paid or deducted in determining the net amount payable to League and Vanice at the closing on January 4, 1980, namely $375,000 to Kaer P. Vanice; $396,008 to Atlas; $12,000 to National Bank of Commerce; and $259,084 to General Motors Acceptance Corporation. Additionally, the parties stipulated that VPCI paid premiums on policies of life insurance on Vanice's life and that such insurance policies had a net value of $24,090.37. (We are unable to reconcile the figures stipulated by the parties with the amounts distributed in conjunction with the sale of capital stock to Misles. However, mathematical reconciliation of figures used by the parties is not necessary to dispose of the questions on appeal.)

The district court found there was no damage to League, because there was no showing that Misles would have completed the sale if VPCI's debts were not satisfied. The district court denied League an accounting and dismissed League's petition.

For his assignments of error League contends the district court erred: (1) In ruling the six causes of action founded on Vanice's concealment of transactions were barred by the statute of limitations; (2) In admitting evidence of communications between League and his attorney, because admission of such evidence violates the lawyer-client privilege protected by Rule 503 of the Nebraska Evidence Rules (Neb. Rev. Stat. § 27-503 (Reissue 1979)); (3) In dismissing the first cause of action based on the sale of VPCI stock to Misles, when League failed to show an agreed-to sale price which would have been paid by Misles without a deduction for VPCI's debts; and (4) In denying League an accounting.

Inasmuch as everyone—trial court and counsel—apparently

proceeded on the theory that six of the questioned transactions, causes of action two through seven, involved concealment of a breach of fiduciary duty owed by a corporate officer to a shareholder of the corporation, and, further, on appeal the parties have devoted a substantial part of their briefs and argument to the question whether League has avoided § 25-207(4), the statute of limitations concerning an action for fraud, we will dispose of League's appeal accordingly.

In our review of the district court's judgment on the issue of the statute of limitations, the finding and decision of the district court, unless clearly wrong, will not be set aside.

"If a petition alleges a cause of action ostensively barred by the statute of limitations, such petition, in order to state a cause of action, must show some excuse tolling the operation and bar of the statute." *S.I.D. No. 145 v. Nye*, 216 Neb. 354, 355, 343 N.W.2d 753, 754 (1984). Therefore, in order to avoid the fatal consequence of his knowledge of facts comprising a cause of action for fiduciary concealment or fraud, League pleaded his lack of knowledge about some of the transactions questioned in his lawsuit.

"*Conceal* means 'To hide, secrete, or withhold from the knowledge of others. To withdraw from observation; to withhold from utterance or declaration; to cover or keep from sight. To hide or withdraw from observation, cover or keep from sight, or prevent discovery of.' " *Christopher v. Evans*, 219 Neb. 51, 55, 361 N.W.2d 193, 196 (1985).

> " 'An action for relief on the ground of fraud must be commenced within four years after the discovery of the facts constituting the fraud, or of facts sufficient to put a person of ordinary intelligence and prudence on an inquiry which, if pursued, would lead to such discovery.' " [Citing and quoting from *Rucker v. Ward*, 131 Neb. 25, 267 N.W. 191 (1936).] . . . The requirement is that if more than 4 years have elapsed since the alleged fraud the victim of it must allege and prove facts as to the failure to discover it which entitles him to maintain an action by virtue of the fraud, notwithstanding the lapse of time, and he must allege and establish diligence in this regard.

*Abels v. Bennett*, 158 Neb. 699, 705-06, 64 N.W.2d 481, 485

(1954).

*Discovery*, as used in reference to a statute of limitations, means that an individual acquires knowledge of a fact which existed but which was previously unknown to the discoverer. See *Sacchi v. Blodig*, 215 Neb. 817, 341 N.W.2d 326 (1983).

> "Whatever fairly puts a person on inquiry is sufficient notice, where the means of knowledge are at hand; and if he omits to inquire, he is then chargeable with all the facts which, by a proper inquiry, he might have ascertained. This, in effect, means that notice of facts which would lead an ordinarily prudent man to make an examination which, if made, would disclose the existence of other facts is sufficient notice of such other facts."

*Baxter v. National Mtg. Loan Co.*, 128 Neb. 537, 558, 259 N.W. 630, 640 (1935).

A defendant alleging the statute of limitations as an affirmative defense has the burden to prove such defense. See *Van Burg v. Van Engen*, 76 Neb. 816, 107 N.W. 1006 (1906).

The record is replete with facts negating concealment of Vanice's transactions questioned by League or demonstrating that League either had discovered those transactions or was placed on notice of facts relating to such events. For approximately 15 years League had the dual capacity of director and shareholder of VPCI. As director or shareholder, League was given or had access to information about the questioned transactions. Perhaps 11 years before he commenced the action against Vanice, League weighed filing suit against Vanice but decided to forego seeking any redress because "there wasn't a lot of gravy on the table." League's notion in 1970 that a lawsuit against Vanice would produce a pittance as a recovery is no excuse for League's deferment in filing until 1981. In his sixth cause of action, League failed to allege facts constituting an excuse tolling the statute of limitations as a bar to his claim. See *S.I.D. No. 145 v. Nye, supra*. Therefore, the district court was correct in ruling that the sixth cause of action was barred by the statute of limitations. Further, League has not shown that the district court is clearly wrong in its decision that Vanice had satisfied the burden of proof regarding the statute of limitations as a bar to the second,

third, fifth, and seventh causes of action.

Appellate surgery is required on League's fourth cause of action, which alleges VPCI paid excessive compensation to Vanice "in·the years 1977, 1978 and 1979." We infer that Vanice received the subject compensation in each of the years mentioned. League's claim based on excessive compensation was not asserted until April 22, 1983, when League filed his third amended petition. The excessive compensation claim pertaining to 1977 and 1978 succumbs to the same infirm pleading suffered by the sixth cause of action—failure to allege facts constituting an excuse tolling operation and bar of the statute of limitations. See *S.I.D. No. 145 v. Nye*, 216 Neb. 354, 343 N.W.2d 753 (1984). The district court correctly dismissed League's fourth cause of action insofar as related to 1977 and 1978.

We empathize with the district court in the blitzkrieg of exhibits (69, including several multipage documents) and experience a sensation of deja vu. In *Rosnick v. Marks*, 218 Neb. 499, 501, 357 N.W.2d 186, 188 (1984), another statute of limitations case, we expressed our puzzlement that "in framing the issues by pleadings, apparently neither party believed it necessary to include the date" on which the subject transaction occurred, and stated: "Proper pleading requires a petition to state in logical and legal form the facts which constitute the plaintiff's cause of action, define the issues to which the defendant must respond at trial, and inform the court of the real matter in dispute."

Here, we again are puzzled at the same deficiency in the pleadings as existed in *Rosnick v. Marks, supra*. The record and 105 pages of briefs by the parties do not supply the precise date in 1979 when VPCI paid Vanice the alleged excessive compensation. As stated in *Streight v. First Trust Co.*, 133 Neb. 340, 354, 275 N.W. 278, 285 (1937): "[W]here the facts incorporated into a petition by way of amendment constitute a cause of action separate and independent from that stated in the original petition, the statute of limitations against the cause of action pleaded in the amendment runs until the filing of such amended petition." In view of the allegations in League's fourth cause of action, if the questioned payment occurred on April

21, 1979, or earlier, an action based on such payment is barred unless there is an excuse tolling the statute of limitations. On the other hand, if the questioned payment(s) occurred on or after April 22, 1979, League has filed his action within the time prescribed for commencement of the action as alleged. Therefore, the cause of action involving 1979 may or may not be barred by the statute of limitations. The decision of the district court in holding that the statute of limitations barred League's claim pertaining to 1979 is not supported by the record and is, therefore, clearly wrong. We remand the fourth cause of action, based on the 1979 payment(s) only, to the district court for further proceedings.

Next, we address League's contention that admitting evidence from his attorney violated the lawyer-client privilege contained in Rule 503 of the Nebraska Evidence Rules. Did League waive the lawyer-client privilege?

Fairness is an important and fundamental consideration in assessing the issue of whether there has been a waiver of the lawyer-client privilege. See *Handgards, Inc. v. Johnson & Johnson*, 413 F. Supp. 926 (N.D. Cal. 1976). In determining whether there has been a waiver of the lawyer-client privilege, the court in *Connell v. Bernstein-Macaulay, Inc.*, 407 F. Supp. 420, 422-23 (S.D.N.Y. 1976), stated:

> "All of these established exceptions to the rules of privilege have a common denominator; in each instance, the party asserting the privilege placed information protected by it in issue through some affirmative act for his own benefit, and to allow the privilege to protect against disclosure of such information would have been manifestly unfair to the opposing party. The factors common to each exception may be summarized as follows: (1) assertion of the privilege was a result of some affirmative act, such as filing suit, by the asserting party; (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and (3) application of the privilege would have denied the opposing party access to information vital to his defense. Thus, where these three conditions exist, a court should find that the party asserting a privilege has

impliedly waived it through his own affirmative conduct." (Citing and quoting from *Hearn v. Rhay*, 68 F.R.D. 574 (E.D. Wash. 1975).)

"The [lawyer-client] privilege exists only to aid in the administration of justice, and when it is shown that the interests of the administration of justice can only be frustrated by the exercise of the privilege, the trial judge may require that the communication be disclosed." *Cohen, et vir v. Jenkintown Cab Co., et al.*, 238 Pa. Super. 456, 464, 357 A.2d 689, 693-94 (1976).

Several of League's claims were ostensively barred by the statute of limitations which protected Vanice from stale claims. To avoid the protection given Vanice by the statute of limitations, League alleged Vanice's concealment of the questioned events or transactions. When he alleged concealment, League injected his knowledge, or lack of knowledge, into the litigation as a crucial issue relevant to disposition of the claims based on an alleged breach of fiduciary duty by Vanice as an officer of VPCI. League is not permitted to thrust his lack of knowledge into the litigation as a foundation or condition necessary to sustain his claim against Vanice while simultaneously retaining the lawyer-client privilege to frustrate proof of knowledge negating the very foundation or condition necessary to prevail on the claim asserted against Vanice. Such tactic or situation would repudiate the sword-shield maxim suggested in *Cerny v. Paxton & Gallagher Co.*, 83 Neb. 88, 92, 119 N.W. 14, 16 (1908), *overruled on other grounds*, *Caster v. Moeller*, 176 Neb. 446, 126 N.W.2d 485 (1964) ("Any other rule would enable the client to use as a sword the protection which is awarded him as a shield.").

Recently, in *Clark v. Clark*, 220 Neb. 771, 371 N.W.2d 749 (1985), we held that a mother's petition requesting child custody as a result of a dissolution proceeding waives the physician-patient privilege conferred by Rule 504 of the Nebraska Evidence Rules (Neb. Rev. Stat. § 27-504 (Reissue 1979)). As a logical analogy drawn from *Clark*, our conclusion is that League, by pleading facts necessary to sustain his causes of action against Vanice, waived the lawyer-client privilege

concerning those communications bearing upon League's knowledge of events or transactions relevant to his claims against Vanice. Any other holding would be a triumph of form over substance and would lead down a legal cul-de-sac during a quest for truth through judicial proceedings. We find no abuse of discretion by the trial court in admitting communications to League from his attorney. Cf. *Clark v. Clark, supra* (waiver of physician-patient privilege).

League contends Vanice violated an agent's fiduciary duty by deducting corporate liabilities in arriving at the amount to be paid to League and Vanice as a result of their sale to Misles. The record substantiates that Misles purchased VPCI's capital stock on the basis that VPCI was a debt-free corporation and that Misles would not have paid the same price for capital stock of VPCI burdened with debt.

"It is the duty of an agent of limited authority to adhere faithfully to the instructions of his principal, and if he exceeds, violates, or neglects them, and loss results to his principal as a natural and ordinary consequence, he is liable therefor." *Winchell v. National Bank of Commerce Trust & Sav. Assn.,* 181 Neb. 870, 872-73, 152 N.W.2d 2, 5 (1967).

Assuming Vanice's violation of League's instruction in the Misle sale, League failed to offer any evidence that Misles would have purchased VPCI capital stock at a price greater than the price actually paid to League and Vanice or that Misles would have paid the same price for the capital stock of an indebted VPCI. The district court was correct in its determination that no loss or damage had been sustained by League.

Finally, League contends he was entitled to an accounting regarding the sale of stock to Misles. In a simplified statement, the rule is: No cause of action proved, no accounting granted.

Except that part of the district court's judgment disposing of League's fourth cause of action pertaining to 1979, the judgment of the district court is affirmed. However, we reverse that part of the district court's judgment concerning League's fourth cause of action pertaining to 1979 and remand this matter to the district court for further proceedings.

AFFIRMED IN PART, AND IN PART REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.