BROEKEMEIER FORD, INC., ET AL., APPELLANTS, V. DUANE CLATANOFF ET AL., APPELLEES.

481 N.W.2d 416

Filed March 20, 1992.   No. S-89-665.

E. Terry Sibbernsen and, on brief, John M. Peebles, of Domina, Gerrard, Copple & Stratton, P.C., for appellants.

Larry L. Brauer, of Allan, Brauer & Mullally, for appellee Clatanoff.

Terrance A. Poppe, of Hecht, Sweet, Alesio, Morrow, Poppe & Otte, P.C., for appellees Langmeier et al.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

SHANAHAN, J.

In 1987, Broekemeier Ford, Inc.; Twin Oaks Lincoln Mercury, Inc.; Willis J. Broekemeier; and Lu Ann Broekemeier, all as sellers, but collectively designated "Broekemeiers," commenced an action in the district court for Seward County against Duane Clatanoff; Roland Langmeier, doing business as Landmark Realty; Forrestt F. Combs; and R. James Pearson, who were involved in the 1979 sale and purchase of corporate property owned by the Broekemeiers' automobile dealerships, Broekemeier Ford and Twin Oaks Lincoln Mercury. Broekemeiers claimed that the defendants' fraud induced the sale of the dealerships' property. In their answers, the defendants asserted that Broekemeiers' cause of action was barred by the statute of limitations expressed in Neb. Rev. Stat. § 25-207 (Reissue 1989) (a tort action for fraud must be commenced within 4 years after discovery of the fraud). Pursuant to Neb. Rev. Stat. § 25-221 (Reissue 1989), the statute

of limitations question was tried separately to the court, which found that the action was barred by the 4-year statute of limitations and dismissed Broekemeiers' action.

## STANDARD OF REVIEW

In a bench trial of a law action, a trial court's factual findings have the effect of a verdict and will not be set aside unless clearly erroneous. In reviewing a judgment awarded in a bench trial of a law action, an appellate court does not reweigh evidence, but considers the evidence in the light most favorable to the successful party and resolves evidentiary conflicts in favor of the successful party, who is entitled to every reasonable inference deducible from the evidence. See, *Albee v. Maverick Media, Inc.*, 239 Neb. 60, 474 N.W.2d 238 (1991); *Oddo v. Speedway Scaffold Co.*, 233 Neb. 1, 443 N.W.2d 596 (1989); *Lynn v. Metropolitan Utilities Dist.*, 225 Neb. 121, 403 N.W.2d 335 (1987); *Alliance Nat. Bank v. State Surety Co.*, 223 Neb. 403, 390 N.W.2d 487 (1986).

## THE SALE IN QUESTION

After more than a decade in automobile dealerships, Broekemeiers, as sole shareholders in their corporate automobile dealerships, listed the dealerships' property for sale in December 1978 at $597,000 through Landmark Realty and its agent, Clatanoff. On January 16, 1979, Combs and Pearson extended an oral offer to purchase the dealerships' property for $526,000 in cash. Thereafter, on February 16 and February 20, 1979, the parties executed two identical contracts of sale for the property. Each contract document consisted of 5 pages and contained 24 numbered paragraphs, including provisions for payment of the $490,000 purchase price, that is, $240,000 paid before closing, with the $250,000 balance payable over a term of 10 years, with interest. The contracts also required that the purchasers, Combs and Pearson, would grant their mortgage on the dealerships' Seward County real estate, valued at $350,000, as security for payment of the contract price.

On May 23, the parties met to close the sale in accordance with the February contracts. Although a lawyer was representing Broekemeiers in the transaction, Willis Broekemeier, without the lawyer, attended the closing. A

"Seller's Settlement Sheet" was circulated at the closing and reflected a sale price of $490,000, with a "Contract amount carried back by seller . . . $250,000.00." Willis Broekemeier placed his signature on the settlement sheet at the closing. Combs and Pearson executed a $250,000 mortgage on the real estate purchased from the dealerships. That mortgage was recorded in Seward County in May 1979. According to Willis Broekemeier, he assumed that a copy of the contracts would be delivered to his lawyer. When the copies were not forthcoming, Willis Broekemeier, at some unspecified time, requested that the defendants supply him with a copy of each contract, but this request was unfulfilled.

In 1982, Broekemeier Ford, by its president, Willis Broekemeier, assigned to The Cattle National Bank of Seward the 1979 Combs-Pearson mortgage. The assignment was collateral for Broekemeier Ford's indebtedness to the bank and expressly referred to the Combs-Pearson real estate mortgage granted as a result of the 1979 contracts, including reference to the book and page of the mortgage records of Seward County, where the mortgage had been on record since May 1979.

## BROEKEMEIERS' LAWSUIT
*Broekemeiers' Allegations.*

When Broekemeiers filed their action in 1987, some 8 years after the sale of the automobile dealerships, they contended that Clatanoff, while representing Broekemeiers, conspired with Combs and Pearson to effectuate the sale ultimately closed on May 23, 1979, and that any February 1979 contract in the defendants' possession "is a false and fraudulent document misstating the agreement of the parties." Broekemeiers did not allege any specific conduct as fraud by the defendants in conjunction with the sale of dealership property. Further, Broekemeiers alleged nothing to explain how or when they discovered the alleged fraud. Broekemeiers claimed that they were damaged as the result of the contracts of February 16 and 20, 1979, since they were compelled to accept the lesser price of $490,000 vis-a-vis the real price of $530,000 specified in another agreement which Broekemeiers assert was signed for sale of the dealership property.

*Trial on Statute of Limitations Issue.*

Copies of the contracts signed on February 16 and 20, 1979, were introduced in evidence at the trial on the statute of limitations issue.

Although Willis Broekemeier, president of Broekemeier Ford and Twin Oaks Lincoln Mercury, acknowledged that he signed the contracts for sale, he claimed that the signature page, that is, the last page signed by Broekemeier, is the only authentic page in each of the five-page contracts. Additionally, Willis Broekemeier testified that on February 19 and 20, 1979, he signed another contract calling for a "$530,000.00 cash payment with no terms" for installment payments of the purchase price. However, Willis Broekemeier was unable to explain how the page bearing his signature became attached to the "wrong contract," which specified the $490,000 price in installment payments. Moreover, Broekemeiers were unable to produce a copy of what they claimed to be the true contract, which required the purchasers to pay $530,000 in 1979, with no provision for installment payments.

According to Broekemeiers, before the closing on May 23, 1979, they never agreed to installment payments secured by a real estate mortgage, but they did agree to accept a cash payment of the purchase price in full at the closing on May 23, 1979. Willis Broekemeier testified that Broekemeiers did, in fact, receive $240,000 from Combs and Pearson in 1979 and that, although Broekemeiers were unaware of the installment payment format followed by Combs and Pearson, Broekemeiers, nevertheless, accepted mortgage payments for 3 years before the assignment to The Cattle National Bank of Seward in 1982. Moreover, notwithstanding that Willis Broekemeier felt that "something was wrong" at the closing in May 1979, he proceeded with the closing in accordance with the settlement sheet. On cross-examination, Willis Broekemeier testified regarding his realization that something was "wrong" in the sale:

[Lawyer:] In May of 1979 after this deal was closed, you didn't like the outcome. Right?

[Broekemeier:] On May 23rd, I was very angry.

Q You were angry with the way the matter closed?

A The way I was slammed on with a $250,000.00 mortgage that I never did agree to.

Q Angry that you didn't get all of your money?

A Definitely.

Q In May of 1979?

A May 23rd approximately, give or take a day.

Willis Broekemeier testified that he did not become aware of the discrepancy between the 1979 contracts and the missing contract document until June 1986, when he obtained copies of the February 16 and 20, 1979, documents in the course of a transaction involving the Small Business Administration.

The district court concluded that Broekemeiers' action was barred by the 4-year statute of limitations in § 25-207 and dismissed Broekemeiers' action.

## ASSIGNMENT OF ERROR

The District Court erred in finding that the Plaintiffs' action was barred by the statute of limitations and in dismissing the action with prejudice at Plaintiffs' cost. The Court erred in finding that the Plaintiffs were possessed of the facts sufficient to put a person of ordinary intelligence and prudence on notice of fraud in May of 1979, thereby holding that the Plaintiffs' cause of action accrued in May of 1979.

## LIMITATION OF ACTIONS

" 'A cause of action accrues and the statute of limitations begins to run when the aggrieved party has the right to institute and maintain suit, although the nature and extent of damages may not be known.' " *L.J. Vontz Constr. Co. v. Department of Roads*, 232 Neb. 241, 246, 440 N.W.2d 664, 666-67 (1989) (quoting from *Rosnick v. Marks*, 218 Neb. 499, 357 N.W.2d 186 (1984)). Accord, *Mangan v. Landen*, 219 Neb. 643, 365 N.W.2d 453 (1985) (statute runs even though plaintiff is ignorant of an existing cause of action); *Interholzinger v. Estate of Dent*, 214 Neb. 264, 333 N.W.2d 895 (1983).

"Statutes of limitations have an important role in disposition of claims between individuals, because such statutes promote and produce finality and thereby stability in human affairs. In this manner statutes of limitations stimulate activity and punish

unreasonable delay in prosecuting claims." *Rosnick v. Marks*, 218 Neb. at 501, 357 N.W.2d at 188. Accord *L.J. Vontz Constr. Co. v. Department of Roads, supra.*

Neb. Rev. Stat. § 25-207 (Reissue 1989) provides in pertinent part: "The following actions can only be brought within four years . . . (4) an action for relief on the ground of fraud, but the cause of action in such case shall not be deemed to have accrued until the discovery of the fraud . . . ."

"*Discovery*, as used in reference to a statute of limitations, means that an individual acquires knowledge of a fact which existed but which was previously unknown to the discoverer." *League v. Vanice*, 221 Neb. 34, 42, 374 N.W.2d 849, 854 (1985).

> To recover in an action for fraud based on a misrepresentation of fact, a plaintiff must prove that (1) the defendant made a representation of a material fact; (2) the representation was false; (3) the representation, when made, was known to be false or was made recklessly as a positive assertion without knowledge concerning the truth of the representation; (4) the representation was made with the intention that the plaintiff would rely on it; (5) the plaintiff reasonably relied on the representation; and (6) as the result of such reliance, the plaintiff suffered damage.

*Edwin Bender & Sons v. Ericson Livestock Comm. Co.*, 228 Neb. 157, 165-66, 421 N.W.2d 766, 771 (1988). Accord, *Dammann v. Litty*, 234 Neb. 664, 452 N.W.2d 522 (1990); *Alliance Nat. Bank v. State Surety Co.*, 223 Neb. 403, 390 N.W.2d 487 (1986).

As we construe Broekemeiers' amended petition in view of its lack of specificity concerning the defendants' conduct constituting fraud, Broekemeiers alleged that the contracts bearing Broekemeiers' signatures were not in fact the contracts drafted in accordance with the agreement of the parties and, therefore, the misrepresented documents fail to express the true agreement of the parties; hence, the contracts bearing Broekemeiers' signatures are fraudulent. On the assumption that our interpretation expresses a cause of action under the circumstances, we proceed to examine the statute of limitations question in Broekemeiers' appeal.

"If a petition alleges a cause of action ostensively barred by the statute of limitations, such petition, in order to state a cause of action, must show some excuse tolling the operation and bar of the statute." *S.I.D. No. 145 v. Nye*, 216 Neb. 354, 355, 343 N.W.2d 753, 754 (1984). Accord *League v. Vanice, supra.* Therefore, if a petition, challenged under the statute of limitations, facially shows that a cause of action is barred by the statute of limitations, a plaintiff must allege facts sufficient to avoid the bar of a statute of limitations and, at trial, must prove facts avoiding the statute of limitations. See, *DeSciose v. Chiles, Heider & Co.*, 239 Neb. 195, 476 N.W.2d 200 (1991); *League v. Vanice, supra*; *S.I.D. No. 145 v. Nye, supra.* However, if a petition, on its face, does not disclose that an action is barred by a statute of limitations, a defendant must plead the statute of limitations as an affirmative defense and has the burden to prove that affirmative defense. See, *DeSciose v. Chiles, Heider & Co., supra*; *League v. Vanice, supra*; *S.I.D. No. 145 v. Nye, supra.*

The allegations of Broekemeiers' amended petition show that their action for fraud is ostensibly barred by the statute of limitations. Therefore, to avoid the bar of the statute of limitations, Broekemeiers must allege and evidentially establish facts exempting their claim from operation of the statute of limitations.

To avoid application of the 4-year statute of limitations prescribed in § 25-207, Broekemeiers contend that they could not have reasonably discovered the alleged fraud until June 1986, when, during the transaction involving the Small Business Administration, Willis Broekemeier obtained copies of the 1979 contracts. Broekemeiers contend that "[a]lthough the evidence at trial indicated that Willis knew at the time of closing in May 1979 that something 'was wrong' with the transaction, it was not until June 1986 that Willis became aware of the cause of harm." Brief for appellants at 6. Also, Broekemeiers contend that the cause of their harm was unknown until 1986, when Willis Broekemeier acquired a copy of the 1979 contracts and realized that Clatanoff, Langmeier, Combs, and Pearson "were the appropriate defendants in this matter." Brief for appellants at 8. Accordingly, Broekemeiers argue that the statute of

limitations did not begin to run until June 1986, when Broekemeiers discovered the fraud, and, therefore, Broekemeiers' action was timely filed in 1987.

Broekemeiers misconstrue the discovery rule pertaining to the statute of limitations for actionable fraud. The gist of Broekemeiers' argument is that since they did not obtain copies of the contracts until 1986, they were unable to discover that the 1979 contracts had been altered and were also unable to ascertain who was responsible for alterations of those contracts. In *Lee v. Brodbeck*, 196 Neb. 393, 397-98, 243 N.W.2d 331, 334 (1976), we stated:

> An action for relief on the ground of fraud must be commenced within 4 years after the discovery of the facts constituting the fraud, or facts sufficient to put a person of ordinary intelligence and prudence on an inquiry which, if pursued, would lead to such discovery. If the fraud or mistake ought to have been discovered, the statute will run from the time such discovery ought to have been made. Burchmore v. Byllesby & Co., 140 Neb. 603, 1 N.W.2d 327 (1941). To avoid the statute of limitations for fraud, plaintiff must plead and prove the impediments to an earlier prosecution of the claim, all facts which relate to or explain the failure to prosecute, and when he first obtained knowledge of the fraud. Reed v. Barnes, 113 Neb. 414, 203 N.W. 567 (1925).

See, also, *Mangan v. Landen*, 219 Neb. 643, 365 N.W.2d 453 (1985); *Grand Island School Dist. #2 v. Celotex Corp.*, 203 Neb. 559, 279 N.W.2d 603 (1979).

Further, while Broekemeiers contend that they believed that the sale of dealership property called for payment in full in 1979 and that they were unaware that the transaction was a time sale with installment payments secured by a real estate mortgage, the record presents facts which are undisputed or virtually conclusively established and, therefore, are conspicuously present for successful invocation of the statute of limitations as a bar to Broekemeiers' action. For instance, Broekemeiers received $240,000 from Combs and Pearson in 1979, a sum which coincides with the amount to be paid before closing in accordance with the contracts bearing Broekemeiers'

signatures, but made no further inquiry or demand concerning the additional payment of $290,000, the balance of the $530,000 purchase price supposedly reflected in the "missing" contract. Then, rather than pressing for full payment of the $290,000 balance in 1979, if the "missing" contract actually existed and prescribed such payment, Broekemeiers accepted installment payments from Combs and Pearson until 1982, payments which admittedly related to the mortgage on dealership real estate sold to Combs and Pearson. Also, in 1982, as a part of financing at The Cattle National Bank of Seward, Broekemeier Ford, through Willis Broekemeier as president of that corporation, assigned to the bank the Combs-Pearson mortgage. The document embodying that assignment specifically referred to the 1979 recorded mortgage granted by Combs and Pearson. Moreover, apparently referring to installment payments and a real estate mortgage to secure those payments, Willis Broekemeier knew that "there was something wrong" at the closing, and yet proceeded to close the sale and thereafter accept installment payments from Combs and Pearson, as previously mentioned.

In light of the foregoing facts, we are extremely incredulous of Broekemeiers' transactional ignorance from 1979 until 1986. However, it is not our view of the facts which is important, for the appellate question is whether the district court's decision is clearly erroneous on the statute of limitations issue. Although the district court may have shared our skepticism about Broekemeiers' version of events leading to the lawsuit, the evidence is such that we are unable to state that the district court was clearly erroneous in its conclusion that Broekemeiers possessed sufficient information to constitute discovery of the alleged fraud and require their filing of an action for fraud within 4 years after May 23, 1979, the date on which the parties closed the sale of dealership property.

Since we are unable to conclude that the district court was clearly erroneous in its conclusion that the statute of limitations prescribed in § 25-207 barred Broekemeiers' action, we affirm the district court's judgment dismissing the action.

AFFIRMED.