JOSEPHINE UPAH, APPELLEE, V. ANCONA BROS. CO. ET AL.,
APPELLANTS.

521 N.W.2d 895

Filed September 23, 1994.    No. S-91-699.

Jerrold L. Strasheim, Gerald P. Laughlin, and Mary L. Swick, of Baird, Holm, McEachen, Pedersen, Hamann & Strasheim, for appellant Ancona Bros. Co.

Fredric H. Kauffman, Shawn D. Renner, and Gregory S. Heier, of Cline, Williams, Wright, Johnson & Oldfather, for appellants Samuel A. Ancona, Joseph I. Ancona, and Carl Ancona.

William Jay Riley, Lisa M. Henkel, and Gerald L. Friedrichsen, of Fitzgerald, Schorr, Barmettler & Brennan, P.C., for appellee.

BOSLAUGH, FAHRNBRUCH, and LANPHIER, JJ., and SIEVERS, Chief Judge, and CONNOLLY, HANNON, and IRWIN, Judges.

BOSLAUGH, J.

The plaintiff, Josephine (Ancona) Upah, filed this action in the Douglas County District Court for civil conspiracy against the defendants, Samuel A. Ancona, Joseph I. Ancona, Carl Ancona, and Ancona Bros. Co. (Company), on March 1, 1989. The individual defendants are the plaintiff's brothers, who are shareholders, officers, and directors of the Company. The case was tried to a jury upon the third amended petition. The jury returned a verdict for the plaintiff in the amount of $3,766,000.

The plaintiff and the individual defendants are the children of Ignatius and Dorothy Ancona and the niece and nephews of Charles Ancona and Vita Ancona, Ignatius' bachelor brother and sister. Ignatius and Charles founded the Company, which is primarily a wholesale food-service distributor, in 1915.

In support of her claim of the defendants' conspiracy to deprive her of stock ownership in the Company, the plaintiff's petition specifically alleges in paragraph 12 various acts of conversion, denial of preemptive rights, and excessive compensation of the individual defendants. It is important to note that other than the use of the words "fraud" and "defraud" the plaintiff does not make any specific allegations

of fraud.

The following are allegations made in paragraph 12 of the second amended petition:

a. Plaintiff became the owner of ten shares of Ancona Bros. Co. stock as evidenced by Ancona Bros. Co. stock certificate number 48 dated June 21, 1961 . . . . Plaintiff never conveyed away such stock to any transferee yet the individual defendants as directors and managing officers of the company, without the knowledge or consent of plaintiff, caused the stock ledger records for Ancona Bros. Co. to reflect that the plaintiff was no longer the owner of said shares of stock after 1964, and they have deprived plaintiff of all benefits of a shareholder in the company. The individual defendants had custody of, control over and responsibility for the stock ledger records. The plaintiff has insufficient information to know which individual defendants physically made the stock ledger entries or directed the making of the entries.

b. On or about June 23, 1965, Samuel A. Ancona, Joseph I. Ancona and Carl Ancona, without notice to or the knowledge of the female shareholders, caused Ancona Bros. Co. to issue for each of themselves forty additional shares of stock. Defendants deprived plaintiff and other female shareholders, Dorothy and Vita Ancona, of their preemptive rights to acquire a proportionate amount of additional stock in their own name.

c. Ignatius S. Ancona died on November 6, 1965, owning 433-1/2 shares of stock in Ancona Bros. Co. Plaintiff became the owner of 72-1/4 shares of such stock pursuant to the decree on final account nunc pro tunc entered in such proceeding which divided the property of the estate in undivided proportions as follows: Dorothy G. Ancona, one-third; Samuel A. Ancona, one-sixth; Joseph I. Ancona, one-sixth; Carl Ancona, one-sixth; Josephine Ancona Upah, one-sixth. After the estate was closed and the Executors discharged, Samuel A. Ancona, Joseph I. Ancona and Carl Ancona as directors and managing officers of Ancona Bros. Co. with custody of, control over and responsibility for the corporate stock

records failed to register plaintiff's shares in the corporate stock book and failed to issue her certificate of stock thereby depriving plaintiff of her benefits of ownership in the 72-1/4 shares.

d. Likewise, after the Ignatius S. Ancona estate was closed and the Executors discharged, Samuel A. Ancona, Joseph I. Ancona and Carl Ancona as directors and managing officers of Ancona Bros. Co. with custody of, control over and responsibility for the corporate stock records failed to register Dorothy G. Ancona's shares in the corporation's stock book and failed to issue her certificate of stock for her 144-1/2 shares of Ancona Bros. Co. stock. These 144-1/2 shares which should have been issued to Dorothy G. Ancona would later have redounded to the benefit of the plaintiff as set forth in Paragraph 12(j) below.

e. On or about June 6, 1966, Samuel A. Ancona, Joseph I. Ancona and Carl Ancona, without notice to or the knowledge of the female shareholders, caused Ancona Bros. Co. to issue for each of themselves forty additional shares of stock. Defendants deprived plaintiff and other female shareholders, Dorothy and Vita Ancona, and the Ignatius S. Ancona Estate of their preemptive rights to acquire a proportionate amount of additional stock in their own name.

f. On or about May 14, 1968, Samuel A. Ancona, Joseph I. Ancona and Carl Ancona, without notice to or the knowledge of the female shareholders, caused Ancona Bros. Co. to issue for each of themselves fifty additional shares of stock. Defendants deprived plaintiff and other female shareholders, Dorothy and Vita Ancona, of their preemptive rights to purchase a proportionate amount of stock in their own name.

g. On or about October 21, 1969, Samuel A. Ancona, Joseph I. Ancona and Carl Ancona, without notice to or the knowledge of the female shareholders, caused Ancona Bros. Co. to issue for each of themselves four hundred additional shares of stock. Defendants deprived plaintiff and other female shareholders, Dorothy and Vita

Ancona, of their preemptive rights to purchase a proportionate amount of stock in their own name.

h. On or about June 1, 1976, Vita Ancona made a gift of 61-3/4 shares of said Ancona Bros. Co. stock to plaintiff. Subsequent thereto, the individual defendants without plaintiff's knowledge or consent cancelled the stock certificate with a date noted of June 11, 1976 and a signature of Sam Ancona and caused the corporate stock ledger to reflect transfer of this stock certificate from Josephine Ancona Upah to treasury stock. To the best of plaintiff's knowledge no value was transferred to plaintiff. The stock value referenced in the corporate records for the 61 3/4 shares of stock, a par value of $100 per share or $6,175, was less than the fair market value of the stock.

i. Charles S. Ancona died on March 8, 1974, owning 489-1/2 shares of Ancona Bros. Co. stock. Vita Ancona, sister of Charles S. Ancona, was the beneficiary of one-half of the residue of the estate and she received 244-3/4 shares of Ancona Bros. Co. stock. The remaining one-half of the Charles S. Ancona estate was to be held in trust for the benefit of Vita Ancona during her lifetime, thereafter the remainder was to be distributed one-fourth outright to each of Carl Ancona, Joseph I. Ancona and Samuel Ancona and one-fourth in trust for the benefit of Josephine Ancona Upah for her lifetime. Vita Ancona revoked her life estate in the trust sometime in the first half of 1979, and on or about June 1979, Samuel A. Ancona and Joseph I. Ancona, Co-Trustees of the Charles S. Ancona testamentary trust, without plaintiff's knowledge or consent caused the stock owned by the trust to be transferred to Ancona Bros. Co. without any consideration. The individual defendants thereafter reissued such shares to themselves, Carl Ancona, Joseph I. Ancona and Samuel A. Ancona. No stock and nothing of value was transferred to plaintiff or to the Charles S. Ancona trust for plaintiff's one-fourth beneficial interest in the trust.

j. Dorothy G. Ancona died on January 24, 1980. The residue of the estate, including 60 shares of Ancona Bros.

Co. stock, was distributable to the Dorothy G. Ancona testamentary trust. The trust was to be managed by the individual defendants as trustees for the benefit of plaintiff during her lifetime and thereafter distributed to the individual defendants. The individual defendants caused the 60 shares of stock to be purchased by Ancona Bros. Co. at $130.71 per share for a total of $7,842. The purchase price was a fraction of the stock's fair market value resulting in a benefit to the defendants as principal shareholders in the corporation and to the detriment of plaintiff. The book value or net asset value shown on the company's March 30, 1980 audit report was $294.79 per share without necessary increases for the company LIFO inventory accounting method, for current valuations of depreciated assets less taxes, for good will, for the stock issued without recognition of preemptive rights (see Paragraph 12b, e, f & g, supra) and for the individual defendant's [sic] distribution of corporate profits solely among themselves over the years rather than retaining earnings for the corporation or paying the profits out to all stockholders including plaintiff as dividends. In the fiscal year ending March 30, 1980, the individual defendants distributed to themselves approximately $480,000 in company profits, over and above their salaries, paying themselves total income of over $220,000 each. The plaintiff has insufficient information now to determine the valuations of depreciated assets, any good will and an appropriate fair market value multiplier; however, adjusting the 1980 audit book value or net asset value for the preemptive rights void stock issuances, for LIFO and for the 1980 distributed corporate profits would make that book value or net asset value over $1,152.00 per share. The fair market value of the stock should then be in excess of $1,152.00 per share, and the value of the 60 shares should be in excess of $69,120.00. The amount of that excess value is presently unknown to the plaintiff.

k. Plaintiff has learned now that she has a personal account at Ancona Bros. Co. These funds apparently consisted in whole or in part of gifts to plaintiff by her

father during his lifetime that defendants have controlled and used for working capital in Ancona Bros. Co. through annual loans of the money to the company without any knowledge or consent by plaintiff. The individual defendants without plaintiff's knowledge or consent caused transfers to be made from plaintiff's personal account into the Dorothy G. Ancona testamentary trust in which defendants are the remainder beneficiaries and deprived plaintiff of some other assets belonging to her by making transfers without plaintiff's knowledge or consent. These transfers include the following:

(1) Transfers on the following dates in the stated amounts from plaintiff's personal account to the Dorothy G. Ancona trust: [the dates are from 12/22/82 through 10/08/87, and the amounts range from $500 to $5,000;]

(2) The individual defendants without plaintiff's knowledge or consent also caused a bonus check issued to plaintiff by Ancona Bros. Co. to be deposited into the Dorothy G. Ancona testamentary trust account in the amount of $2,564.00 on or about July 30, 1980;

(3) The individual defendants caused interest earned upon plaintiff's personal account in the amount of $3,337.71 to be deposited into the Dorothy G. Ancona testamentary trust on April 1, 1985;

(4) The individual defendants caused interest earned upon plaintiff's personal account in the amount of $2,070.86 to be deposited into the Dorothy G. Ancona testamentary trust on April 5, 1986;

(5) The individual defendants without plaintiff's knowledge or consent deposited into the Dorothy G. Ancona testamentary trust $3,980.03 on or about April 24, 1981, which it appears belonged outright to plaintiff;

(6) Additionally, defendants, without plaintiff's knowledge or consent, transferred into the Dorothy G. Ancona testamentary trust on or about March 17, 1981, $10,776.66, which amount apparently represented part of Plaintiff's personal inheritance from the 1965 Ignatius S. Ancona estate; and

(7) Defendants have failed to document or explain the

legitimacy of other deposits into the Dorothy G. Ancona trust accounts, rather than distributions outright to plaintiff, with regard to the following amounts: $14,436.56 transferred from First National Bank on March 7, 1980; $6,062.51 deposited March 14, 1980; and $1,018.21 deposited April 1, 1980.

The plaintiff alleged that the Company is jointly and severally liable for the acts of the individual defendants. According to the plaintiff's second amended petition: "The actions of the individual defendants were done within the scope of their corporate duties, and those actions and the individual defendants' knowledge are imputed to Ancona Bros. Co."

The plaintiff also alleged that she had no knowledge and no reason to know of the defendants' conspiracy until January 1989, 2 years after she had given her ex-husband, Richard Upah, power of attorney. The plaintiff gave Upah power of attorney after her brother Samuel told her she was running out of money from accounts held by the defendants for her and that she must cut back on the expenses of help for her health care. The plaintiff has multiple sclerosis.

In her prayer for relief in the second amended petition, the plaintiff requested damages and equitable relief.

The Company assigned as error that the plaintiff failed to allege a cause of action against it for civil conspiracy. In order to prevail on a claim of civil conspiracy against the Company, the plaintiff was required to plead and prove that the individual defendants acted outside the scope of their authority or other than in the normal course of their corporate duties in furtherance of the conspiracy. See *Renner v. Wurdeman*, 231 Neb. 8, 434 N.W.2d 536 (1989). The plaintiff failed to plead that the individual defendants were acting outside the scope of their authority in furtherance of the conspiracy. Instead, the plaintiff alleged, "The actions of the individual defendants were done within the scope of their corporate duties, and those actions and the individual defendants' knowledge are imputed to Ancona Bros. Co."

As a matter of law, the plaintiff failed to state a claim for civil conspiracy against the Company, particularly as to those actions of the individual defendants in their capacities as

brothers, personal representatives, and trustees.

In their answers, the defendants pled that the plaintiff's claims were barred by the statute of limitations. A separate trial was held on the statute of limitations issue on June 20, 1990. In an order dated July 9, 1990, the trial court held that the plaintiff's claims were not barred by the statute of limitations.

The individual defendants and the Company contend the trial court erred in its decision concerning the statute of limitations issue because the plaintiff's petition was barred on its face by the statute of limitations, thus failing to state a cause of action.

" 'If a petition alleges a cause of action ostensively barred by the statute of limitations, such petition, in order to state a cause of action, must show some excuse tolling the operation and bar of the statute.' " *L.J. Vontz Constr. Co. v. Department of Roads*, 232 Neb. 241, 243-44, 440 N.W.2d 664, 665 (1989), quoting *Rosnick v. Marks*, 218 Neb. 499, 357 N.W.2d 186 (1984). Accord, *St. Paul Fire & Marine Ins. Co. v. Touche Ross & Co.*, 244 Neb. 408, 507 N.W.2d 275 (1993); *Broekemeier Ford v. Clatanoff*, 240 Neb. 265, 481 N.W.2d 416 (1992); *DeSciose v. Chiles, Heider & Co.*, 239 Neb. 195, 476 N.W.2d 200 (1991); *League v. Vanice*, 221 Neb. 34, 374 N.W.2d 849 (1985); *S.I.D. No. 145 v. Nye*, 216 Neb. 354, 343 N.W.2d 753 (1984). When it is apparent on its face that an action is barred by the statute of limitations, the petition fails to state a cause of action. *Plock v. Crossroads Joint Venture*, 239 Neb. 211, 475 N.W.2d 105 (1991), citing *L.J. Vontz Constr. Co., supra*.

A petition which shows on its face that the action is barred by the statute of limitations may be attacked on appeal. *Plock, supra*. However, on appeal, the petition will be liberally construed to determine whether it states a cause of action. *Id*.

A claim of civil conspiracy is not actionable in itself, but serves to impose vicarious liability for the underlying wrongs of those who are party to the conspiracy. *Riddell v. Riddell Washington Corp.*, 866 F.2d 1480 (D.C. Cir. 1989). See, *Treptow Co. v. Duncan Aviation, Inc.*, 210 Neb. 72, 313 N.W.2d 224 (1981); *Trebelhorn v. Bartlett*, 154 Neb. 113, 47 N.W.2d 374 (1951). The statute of limitations applicable to civil conspiracy is that applicable to the underlying wrong. See

*Riddell, supra.*

In this case, the underlying wrongs of the plaintiff's alleged conspiracy are alleged acts of conversion by the defendants (paragraph 12(a), (c), (d), (h), (i), (j), and (k)), alleged denials of the plaintiff's preemptive rights concerning various stock issuances to the defendants (paragraph 12(b), (e), (f), and (g)), and alleged excessive compensation (paragraph 12(j)).

The statute of limitations for conversion actions is 4 years. Neb. Rev. Stat. § 25-207(2) (Reissue 1989). Preemptive rights are provided by Neb. Rev. Stat. § 21-2025 (Reissue 1991). The statute of limitations applicable to an action upon a liability created by statute is 4 years. Neb. Rev. Stat. § 25-206 (Reissue 1989). The statute of limitations for excessive compensation is 4 years. § 25-207(3).

The point at which a statute of limitations commences to run must be determined from the facts of each case. A cause of action accrues and the statute of limitations begins to run when the aggrieved party has the right to institute and maintain a suit. Generally, this is true even though the plaintiff may be ignorant of the existence of the cause of action. *St. Paul Fire & Marine Ins. Co., supra*; *Mangan v. Landen*, 219 Neb. 643, 365 N.W.2d 453 (1985); *Jones v. Johnson v. Pullen*, 207 Neb. 706, 300 N.W.2d 816 (1981); *Grand Island School Dist. #2 v. Celotex Corp.*, 203 Neb. 559, 279 N.W.2d 603 (1979).

The plaintiff did not file this action until March 1, 1989. Most of the claims alleged in the plaintiff's petition involve transactions beginning on June 21, 1961, and completed prior to the end of 1980. With the exception of the claims contained in paragraph 12(k), which were abandoned by the plaintiff prior to the jury trial of this matter, and the allegations in paragraph 12(i), the plaintiff's petition for civil conspiracy was barred on its face by the applicable statute of limitations.

In this case, the only excuse available to the plaintiff to avoid the bar of the statute of limitations is that the defendants fraudulently concealed the cause of action from her. See *Muller v. Thaut*, 230 Neb. 244, 430 N.W.2d 884 (1988). Under the doctrine of fraudulent concealment, the plaintiff must show that he or she exercised due diligence to discover his or her cause of action before the statute of limitations expired and that the

defendant committed some affirmative act of fraudulent concealment which prevented the plaintiff from discovering his or her cause of action. *Kicken v. Valentine Production Credit Ass'n*, 628 F. Supp. 1008 (D. Neb. 1984). Unless there is a fiduciary relationship between the parties, mere silence is not enough to overcome the applicable period of limitation. *Lumber Village v Siegler*, 135 Mich. App. 685, 355 N.W.2d 654 (1984).

In her petition, the plaintiff does not allege facts explaining why the statute of limitations on her cause of action is tolled, but only that she did not know and could not have known about the defendants' alleged conspiracy until January 1989.

Even construing the plaintiff's petition liberally, it fails to allege that the defendants committed some act of fraudulent concealment which prevented the plaintiff from discovering her cause of action.

Furthermore, with the exception of the allegation made in paragraph 12(i), that the individual defendants transferred stock in the Charles Ancona trust to themselves without consideration or notice to the plaintiff, the record of the trial on the statute of limitations fails to show that the defendants concealed any facts which would have put the plaintiff on notice of any cause of action.

At the time of the trial on the statute of limitations, the operative pleading was the plaintiff's second amended petition. The prayer for relief in plaintiff's second amended petition asked for damages for the various acts of conversion alleged in paragraph 12, for damages for alleged excessive compensation paid to the defendants, for damages for the Company's failure to declare dividends to her, and for a declaratory judgment that the stock acquisitions by the defendants which allegedly violated the plaintiff's preemptive rights are void.

On November 21, 1990, the plaintiff sought leave to file a third amended petition, which was substantially identical to her second amended petition in that it left intact the ultimate relief sought (voiding prior issuances of shares and damages for value of stock, for excessive compensation, and for undeclared dividends), even though the formal prayer was changed to request damages only. On December 21, 1990, over the

defendants' objections, the trial court granted leave to file the plaintiff's third amended petition changing the case to one of law, requiring trial by jury. Previously, on November 1, 1990, the trial court had determined the case was of equitable cognizance.

The remedy of voiding stock issued in violation of a shareholder's preemptive rights is equitable in nature. 18A Am. Jur. 2d *Corporations* § 536 (1985). A cause of action for excessive compensation is properly brought in a court of equity, and a proceeding to compel payment of dividends is of an equitable nature. 5A William Meade Fletcher, Fletcher Cyclopedia of the Law of Private Corporations § 2171 (perm. ed. 1987); 11 Fletcher, *supra*, § 5326 (perm. ed. 1986).

While the plaintiff's third amended petition requests only damages, the theories presented in her case are a mixture of legal and equitable causes of action, and the trial court erred in changing this case from one in equity to one at law. When equity acquires jurisdiction of an action, it will retain it for all purposes until the litigation is completely and finally determined. *Brtek v. Cihal*, 245 Neb. 756, 515 N.W.2d 628 (1994); *Workman v. Workman*, 167 Neb. 857, 95 N.W.2d 186 (1959).

When reviewing a question of law, an appellate court is obligated to reach a conclusion independent of the trial court's ruling. See *Central States Resources v. First Nat. Bank*, 243 Neb. 538, 501 N.W.2d 271 (1993).

> In an appeal of an equitable action . . . an appellate court tries factual questions de novo on the record and reaches a conclusion independent of the findings of the trial court, provided, where credible evidence is in conflict on a material issue of fact, an appellate court considers and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another.

*Wolf v. Degner*, 243 Neb. 702, 702-03, 502 N.W.2d 440, 441 (1993).

The record on the statute of limitations trial shows the following facts:

Prior to 1960, the Company was run by Ignatius and

Charles, and Vita worked for the Company until 1960. The individual defendants took over management of the Company in the early 1960's.

On June 21, 1961, stock certificate No. 48 of the Company was issued to the plaintiff, conveying 10 shares of stock. In 1962, Ignatius purchased the 10 shares from the plaintiff for $1,000, par value of $100 per share. This transaction is reflected in stock certificate No. 48, in stock certificate No. 52, in the Company's capital stock ledger, and in the personal accounts of Ignatius and the plaintiff. There is no evidence that the individual defendants had anything to do with the transactions between Ignatius and the plaintiff involving the transfer of the 10 shares.

Ignatius died on November 6, 1965. Ignatius' estate, which included 433$^1/_2$ shares of Company stock, was distributed in 1967 by Charles and Samuel, the coexecutors. Dorothy declined to take under Ignatius' will, electing to take her one-third statutory share, leaving the individual defendants and the plaintiff each one-sixth of the estate. That statutory distribution was confirmed by a decree filed in the county court for Douglas County on February 8, 1967.

Receipts filed in the probate proceeding and signed by the individual defendants, the plaintiff, and their mother, Dorothy, confirm each received his or her statutory share of Ignatius' estate. The assets of Ignatius' estate, which totaled $85,371.45, were distributed pursuant to a distribution agreement dated May 17, 1967. That agreement shows that the plaintiff received her one-sixth share of $13,857.84 in cash via two payments, one, a $5,000 check payable to the plaintiff, the other, a deposit of $8,857.84 in the plaintiff's emergency multiple sclerosis account at the Company.

Dorothy received $29,940.09 from Ignatius' estate, which included a promissory note from the individual defendants for $20,655.41 for her one-third share of Ignatius' stock in the Company. On September 15, 1967, Dorothy forgave the individual defendants' note and made a gift of cash to the plaintiff in the amount of $6,885.14, which was placed in the plaintiff's personal account at the Company.

Charles died on March 8, 1974. His estate, including 489$^1/_2$

shares of Company stock, was distributed by the coexecutors, Samuel and Joseph.

Charles left one-half of his estate outright to Vita and the other one-half to Samuel and Joseph as trustees for Vita for life. Upon Vita's death, three-fourths of the trust was to go to the individual defendants outright, the remaining one-fourth to Samuel and Joseph in trust for the plaintiff for life. Upon the plaintiff's death, the balance of the trust estate was to go outright to the individual defendants.

On February 17, 1976, the Company reissued to Vita the 244³/₄ shares left to her outright. Vita decided to give those shares to the individual defendants and to give the plaintiff a cash equivalent. The 244³/₄ shares were reissued, with 61 shares to Samuel, 61 to Joseph, 61 to Carl, and 61³/₄ to the plaintiff. On June 11, 1976, the plaintiff's 61³/₄ shares were reacquired as treasury shares, and the Company paid the plaintiff $6,175, the par value for her shares.

Vita testified that she gave the individual defendants the stock and the plaintiff money. Vita stated that the plaintiff went to her house after receiving the check, showed the check to Vita, and thanked Vita for the money.

Vita also gave the individual defendants her life interest in the 244³/₄ shares held in trust. On June 15, 1979, Samuel and Joseph, as trustees, caused such shares to be reissued, 82 shares to Samuel, 81³/₄ shares to Joseph, and 81 shares to Carl. The individual defendants did not discuss this with the plaintiff. They meant to give her a like amount of money, but there is nothing to indicate that they ever did.

Dorothy died in 1980. Dorothy left the balance of her estate, including 60 shares of Company stock, to the individual defendants as cotrustees in trust for the plaintiff for her life. The cotrustees were given unlimited discretion. Upon the plaintiff's death, one-fourth of the trust goes to each of the individual defendants and one-eighth to each of the plaintiff's two children.

The 60 shares of Company stock in Dorothy's estate were surrendered to the Company and retired as treasury stock. Dorothy's estate was paid $7,842.60, $130.71 per share, for the stock. These transactions are reflected in the documents

pertaining to Dorothy's estate.

Notice of all of the various estate proceedings was given pursuant to law. The plaintiff's personal files contained copies of documents relating to all three estates at issue, and the plaintiff's signature appeared on a variety of the estate documents.

The plaintiff also knew that she had money at the Company. The Company provided her with a car and health insurance. The plaintiff gave Samuel her medical bills for payment through her personal accounts, and she received from Samuel checks from the Dorothy Ancona trust. The plaintiff was sent annual Internal Revenue Service Forms 1099 showing interest income received from those accounts, and she was sent annual confirmation letters from the Company's outside auditors confirming the amounts in those accounts. Furthermore, the plaintiff's daughter, who is in daily contact with the plaintiff and assists her with business matters, testified that in 1981, she discussed the plaintiff's personal accounts at the Company with Samuel.

The plaintiff is a college graduate. Although she has multiple sclerosis, and the plaintiff's locomotion is affected by the multiple sclerosis, it does not affect her mental functions.

The plaintiff did not ask the individual defendants or anyone else associated with the Company for information concerning her interests in the Company. The defendants did not discuss Company business with the plaintiff.

In 1987, when Samuel informed the plaintiff she needed to cut back on her in-home companion care because she was running out of money, the plaintiff gave her ex-husband an irrevocable durable power of attorney to try to find out what had happened to her money. After the filing of accounting actions in the Charles Ancona trust and the Dorothy Ancona trust, this action was filed on March 1, 1989.

In this case, with the exception of the allegation made in paragraph 12(i), the plaintiff has failed to show that the defendants concealed any facts which would have put the plaintiff on notice of any cause of action. In paragraph 12(i), the plaintiff alleges that without her knowledge or consent, Samuel and Joseph caused the 244³/₄ shares in the Charles

Ancona trust to be transferred to the Company without any consideration and that the individual defendants thereafter reissued those shares to themselves without any stock or value being transferred to the plaintiff or to the Charles Ancona trust. The evidence shows that Samuel and Joseph did make this alleged transfer without notifying the plaintiff and without transferring anything of value to her or the trust. As trustees of the trust of which the plaintiff was a beneficiary, Samuel and Joseph had a fiduciary duty to disclose this information to the plaintiff.

Generally, for fraudulent concealment to delay running of the statute of limitations, the concealment must be manifested by an affirmative act or misrepresentation. *Lumber Village v Siegler*, 135 Mich. App. 685, 355 N.W.2d 654 (1984). However, if a trust or confidential relationship exists between the parties, which imposes a duty to disclose, mere silence by the party with a duty to disclose constitutes fraudulent concealment. *Conway v. Conway*, 487 N.W.2d 21 (S.D. 1992).

Evidence adduced at the jury trial of this case shows that the individual defendants returned the 244³/₄ shares of stock to the trust sometime after this action was filed. At oral argument before this court, the individual defendants admitted that they had a duty to disclose this transaction to the plaintiff and that they failed to do so.

Regarding the remaining allegations in paragraph 12, the plaintiff has failed to show that the defendants fraudulently concealed any facts which would have put her on notice of any cause of action against them. With regard to the stock issuances, which occurred in 1965, 1966, 1968, and 1969, that the plaintiff claims were in violation of her preemptive rights, the defendants had no duty to disclose these transactions to her, because the evidence shows she had no stock ownership in the Company. As to the remaining allegations in paragraph 12 which are facially barred by the statute of limitations, the evidence established that the means of knowledge were at hand to put the plaintiff on inquiry as to any cause of action she might have had against the defendants. See, *St. Paul Fire & Marine Ins. Co. v. Touche Ross & Co.*, 244 Neb. 408, 507 N.W.2d 275 (1993); *League v. Vanice*, 221 Neb. 34, 374 N.W.2d

849 (1985).

Except for claims in paragraph 12(i) against the individual defendants who were fiduciaries, and those claims alleged in paragraph 12(k) which were withdrawn prior to trial and occurred on or after March 1, 1985, the plaintiff's cause of action was barred on its face by the statute of limitations and should have been dismissed because the plaintiff failed to allege and prove any excuse to avoid the statute of limitations.

It is unnecessary to consider the other assignments of error.

For the reasons discussed herein, the judgment is reversed and the cause remanded for further proceedings against the individual defendants Samuel A. Ancona and Joseph I. Ancona with respect to the claim stated in paragraph 12(i) of the plaintiff's petition. The petition is dismissed as to the defendants Carl Ancona and Ancona Bros. Co.

APPEAL DISMISSED IN PART, AND IN PART
REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.

HASTINGS, C.J., WHITE, CAPORALE, and WRIGHT, JJ., not participating.