158 F.3d 622
 Brian Keith STUART, a minor, by his natural guardian and
next friend Pamela Jean Craven; Pamela Jean Craven,
individually; Paula Kairdolf; Errol M. Kairdolf, as
parents and natural guardians of Michella Renee Kairdolf, a
minor; Paula Kairdolf, individually; Errol M. Kairdolf,
individually, on behalf of themselves and all others
similarly situated, Plaintiffs-Appellants,
v.
AMERICAN CYANAMID COMPANY, a wholly owned subsidiary of
American Home Products Corporation, Defendant-Appellee.
American Home Products Corporation, Defendant.
 No. 97-9548.
 United States Court of Appeals,
Second Circuit.
 Argued June 17, 1998.
Decided Sept. 21, 1998.
 
 Marc S. Moller (Henry Glukstern, of counsel), Kreindler & Kreindler, New York City, (Stanley P. Kops, Kops & Fenner, P.C., Philadelphia, Pennsylvania, of counsel), for Plaintiffs-Appellants.
 Daniel J. Thomasch (Elyse D. Echtman, of counsel), Donovan, Leisure, Newton & Irvine LLP, New York City, for Defendant-Appellee American Cyanamid Company.
 Before: MINER, McLAUGHLIN, and LEVAL, Circuit Judges.
 
 BACKGROUND
 
 1
 McLAUGHLIN, Circuit J.
 
 
 2
 Polio is a disease of the central nervous system for which Dr. Jonas Salk developed a vaccine in 1955. The Salk vaccine was an inactivated polio vaccine ("IPV"), derived from a dead polio virus. Although the Salk vaccine dramatically decreased the incidence of polio, it did not eradicate the disease.
 
 
 3
 While Dr. Salk was developing his IPV which had to be injected, other scientists, notably Dr. Albert Sabin, were working on an oral polio vaccine ("OPV"). Unlike IPV, OPV is produced from a live virus that is attenuated, but not killed, during the production process. OPV has several advantages over Dr. Salk's IPV. First, OPV is less expensive and requires only a single dose, as opposed to three inoculations of IPV and a follow-up booster shot. In addition, a person who receives OPV cannot transmit polio. In contrast, persons inoculated with IPV can serve as carriers of the disease, even though they would not themselves be infected.
 
 
 4
 OPV, however, is no more a miracle drug than an IPV injection. Like all vaccines cultivated from live viruses, OPV creates immunity by inducing a mild infection in the recipient. Thus, a person who receives OPV, or comes in close contact with such a recipient during the infection period, may develop polio.
 
 
 5
 In 1960, the Surgeon General of the United States approved OPV for use in the United States. One year later, the Division of Biological Standards of the National Institutes of Health ("DBS"), adopted regulations governing the issuance of manufacturing licenses for OPV. In 1962, American Cyanamid Company ("Cyanamid"), which had purchased the vaccine material developed by Dr. Sabin, applied to the DBS for a license to manufacture OPV. The DBS licensed Cyanamid to manufacture and sell OPV. Since 1963, Cyanamid has distributed an OPV product under the trade name "Orimune."
 
 A. The Craven/Stuart Action
 
 6
 On December 9, 1978, Brian Stuart was born in Nebraska. At the age of three months, Brian received Orimune at the University of Nebraska Medical Center Clinic. Within thirty days of receiving the vaccine, he became permanently paralyzed. In May 1979, doctors told Brian's mother, Pamela Jean Craven, that they were "99 percent certain" that Brian's paralytic condition was caused by a vaccine-induced polio infection.
 
 
 7
 Later that month, Craven retained an attorney, Daniel Cullan, to pursue Brian's legal rights with respect to the vaccine-induced polio. Attorney Cullan informed Ms. Craven that she "had a case." However, no suit was commenced against Cyanamid.
 
 
 8
 Eleven years later, Ms. Craven retained a new attorney, Edward Jelinek. On September 27, 1990, Attorney Jelinek and Ms. Craven filed a petition on Brian's behalf in the United States Court of Claims under the National Childhood Vaccine Injury Compensation Act of 1986 ("VCA"), 42 U.S.C. § 300aa et seq.. The VCA was established to compensate for specified injuries, including polio, caused by a covered vaccine.
 
 
 9
 In 1994, Craven changed counsel again, this time retaining Marc Moller and Stanley Kops. Acting on the advice of Moller and Kops, Craven withdrew the VCA petition on November 25, 1994, leaving no action pending on behalf of Brian Stuart.
 
 B. The Kairdolf Action
 
 10
 Michella Kairdolf was born in Louisiana on November 22, 1982. Two months later, she received Orimune at the office of her pediatrician, Dr. James Michalik. Within thirty days, Michella became paralyzed. In August 1984, she was referred to the Centers for Disease Control of the United States Public Health Service and diagnosed as having vaccine-induced polio. Dr. James Bennett confirmed this diagnosis and informed Michella's parents, Errol and Paula Kairdolf, on March 17, 1987 that there was a "connection between the medical treatment [i.e., OPV vaccination] and [Michella's] disease."
 
 
 11
 The Kairdolfs filed a petition on behalf of Michella under the VCA on January 31, 1991. On October 24, 1994, acting on the advice of Moller and Kops, the Kairdolfs withdrew the petition, leaving no action pending on behalf of Michella.
 
 C. The District Court Proceedings
 
 12
 On June 29, 1995, Pamela Craven, Paula Kairdolf, and Errol Kairdolf commenced a putative class action in the United States District Court for the Southern District of New York against Cyanamid and its parent corporation, American Home Products. The action, brought on behalf of Craven, the Kairdolfs, Brian and Michella, and all other similarly situated persons alleged six theories of liability: (1) strict liability; (2) fraud; (3) negligence; (4) breach of implied warranty of merchantability; (5) breach of implied warranty of fitness for a particular purpose; and (6) breach of express warranty of fitness for a particular purpose.
 
 
 13
 The case was initially assigned to Judge Miriam Cedarbaum, who held a pretrial conference. Following the initial conference, the case was reassigned to Judge Peter Leisure. When Judge Leisure recused himself shortly after receiving the assignment, the case was assigned to Judge Allen Schwartz.
 
 
 14
 On January 22, 1996, Judge Schwartz held a pretrial conference and set a schedule for motions. Cyanamid moved for summary judgment, contending that: (1) plaintiffs' claims were time-barred; (2) plaintiffs lacked standing; and (3) the district court lacked subject matter jurisdiction.
 
 
 15
 On June 26, 1997, while the summary judgment motion was still pending, the case was reassigned to Judge Robert Sweet. Judge Sweet scheduled a conference for November 5, 1997. Before this conference could occur, however, the case was reassigned to Judge Denise Cote. On November 5, 1997, Judge Cote granted Cyanamid's motion for summary judgment. By Opinion and Order, Judge Cote held that: (1) Craven's claims on behalf of herself and Brian Stuart were time-barred under Nebraska's ten-year statute of repose for product liability actions; and (2) the Kairdolfs' claims were time-barred under Louisiana's one-year statute of limitations for tort actions. Because Judge Cote found that all claims were barred by the relevant statutes of limitations and repose, she declined to address Cyanamid's claims that the court lacked subject matter jurisdiction or that plaintiffs lacked standing. Craven and the Kairdolfs now appeal.
 
 DISCUSSION
 I. Standard of Review
 
 16
 This Court reviews Judge Cote's grant of summary judgment de novo, viewing all facts in the light most favorable to Craven and the Kairdolfs. See Bedoya v. Coughlin, 91 F.3d 349, 351 (2d Cir.1996).
 
 
 17
 Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).
 
 II. Statutes of Limitations and Repose
 A. Choice-of-Law Rules
 
 18
 Where jurisdiction rests upon diversity of citizenship, a federal court sitting in New York must apply the New York choice-of-law rules and statutes of limitations. See Guaranty Trust Co. v. York, 326 U.S. 99, 108-09, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945); Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). New York courts generally apply New York's statutes of limitations, even when the injury giving rise to the action occurred outside New York. See Stafford v. International Harvester Co., 668 F.2d 142, 147 (2d Cir.1981). This general rule, however, is subject to a traditional statutory exception, New York's "borrowing" statute, C.P.L.R. § 202.
 
 
 19
 Under C.P.L.R. § 202, when a nonresident plaintiff sues upon a cause of action that arose outside of New York, the court must apply the shorter limitations period, including all relevant tolling provisions, of either: (1) New York; or (2) the state where the cause of action accrued. See N.Y.C.P.L.R. § 202 (McKinney 1990). For purposes of C.P.L.R. § 202, a cause of action sounding in negligence or product liability accrues in the state where the injury occurs. See Dugan v. Schering Corp., 86 N.Y.2d 857, 635 N.Y.S.2d 164, 165, 658 N.E.2d 1037 (N.Y.1995); Besser v. E.R. Squibb & Sons, Inc., 146 A.D.2d 107, 539 N.Y.S.2d 734, 736 n. 3 (1st Dep't 1989) (citations omitted), aff'd, 75 N.Y.2d 847, 552 N.Y.S.2d 923, 552 N.E.2d 171 (N.Y.1990). Hence, an action by a nonresident on a foreign cause of action is untimely if it is barred under the law of either New York or the state where the injury occurred.
 
 B. The Craven/Stuart Claims
 
 20
 1. Applicability of Nebraska's Statute of Repose
 
 
 21
 Under Neb.Rev.Stat. § 25-224(1), "[a]ll product liability actions, ... shall be commenced within four years next after the date on which the death, injury, or damage complained of occurs." Neb.Rev.Stat. § 25-224(1) (1995). There is an outside limit, however, imposed by subsection (2) of the same statute; it provides that any product liability action must "be commenced within ten years after the date when the product which allegedly caused the personal injury, death, or damage was first sold or leased for use or consumption." Id. § 25-224(2). Because subsection (2) bars an action for injuries occurring more than ten years after a product is marketed, it is properly viewed as a statute of repose, rather than a statute of limitations. See Gillam v. Firestone Tire & Rubber Co., 241 Neb. 414, 489 N.W.2d 289, 291 (Neb.1992).
 
 
 22
 Generally speaking, a statute of limitations establishes the time period within which lawsuits may be commenced after a cause of action has accrued. See 51 Am.Jur.2d Limitation of Actions § 13 (1993). It is an affirmative defense, affecting the remedy, but not the existence of the underlying right. See Paver & Wildfoerster v. Catholic High Sch. Ass'n, 38 N.Y.2d 669, 382 N.Y.S.2d 22, 25, 345 N.E.2d 565 (N.Y.1976). In contrast, a statute of repose extinguishes the cause of action, the right, after a fixed period of time, usually measured from the delivery of the product or completion of work, regardless of when the cause of action accrued. See 1 Calvin W. Corman, Limitation of Actions § 1.3.2 (1991). Thus, a statute of repose may bar commencement of an action even before the cause of action accrues. Similarly, a plaintiff may be barred from bringing an action because the statute of repose has run, even though the applicable statute of limitations has not yet expired.
 
 
 23
 Neither this court, nor the New York Court of Appeals, has addressed whether C.P.L.R. § 202 applies when the "borrowed" statute happens to be a statute of repose, rather than a statute of limitations. Both the Appellate Division, First Department and the United States District Court for the Southern District of New York have concluded that C.P.L.R. § 202 applies to both without distinction. See Barnett v. Johnson, 839 F.Supp. 236, 239 (S.D.N.Y.1993); Ledwith v. Sears Roebuck & Co., 231 A.D.2d 17, 660 N.Y.S.2d 402, 406 (1st Dep't 1997). These courts have reasoned that the purpose of the borrowing statute--preventing forum shopping by plaintiffs seeking the holy grail of the longer period--is best served by applying the period of the foreign state, regardless of how it is denominated.
 
 
 24
 Neither party challenges Judge Cote's application of Nebraska's statute of repose. Accordingly, we see no need to consider whether the New York Court of Appeals would agree that a statute of repose would be borrowed under C.P.L.R. § 202.
 
 2. Timeliness of the Craven/Stuart Action
 
 25
 Judge Cote correctly determined that Pamela Craven's and Brian Stuart's claims are barred by Nebraska's ten-year statute of repose. The statute begins to run when the product is "first sold or leased for consumption." Neb.Rev.Stat. § 25-224(2) (1995); see Gillam, 489 N.W.2d at 291. The latest date that the time period began to run was March 19, 1979, the date that Brian Stuart was inoculated with the Orimune vaccine. See Witherspoon v. Sides Constr. Co., 219 Neb. 117, 362 N.W.2d 35, 39-41 (Neb.1985) (statute of repose begins to run when product received by ultimate consumer); Fritchie v. Alumax Inc., 931 F.Supp. 662, 674 (D.Neb.1996). Therefore, Cyanamid became immune to suit no later than March 19, 1989. Because Craven did not commence the action until 1995, the Craven claims are clearly time-barred.
 
 
 26
 Craven contends that Judge Cote erred because: (1) Cyanamid's fraudulent concealment tolled the statute of repose; (2) Cyanamid conceded that its fraudulent concealment tolled the statute of repose; (3) Brian's claims are not untimely because the statute of repose was tolled during Brian's infancy; and (4) their claims for breach of warranty are timely.
 
 
 27
 Craven's contention that Cyanamid's fraudulent concealment tolled the statute of repose is without merit. A defendant who fraudulently conceals "a material fact necessary to the accrual of a cause of action against him" may indeed be equitably estopped from raising Nebraska's statute of repose as a defense. See Schendt v. Dewey, 246 Neb. 573, 520 N.W.2d 541, 548 (Neb.1994) (per curiam). To establish fraudulent concealment, however, a plaintiff must show that: (1) "he or she exercised due diligence to discover his or her cause of action" before the relevant time period expired; and (2) the defendant concealed "any facts which would have put [the plaintiff] on notice of any cause of action." Upah v. Ancona Bros. Co., 246 Neb. 585, 521 N.W.2d 895, 902 (Neb.1994). When the "means of knowledge [are] at hand to put the plaintiff on inquiry of any cause of action she might have had against the defendants," a plaintiff cannot claim fraudulent concealment. Id. at 905.
 
 
 28
 Craven asserts that the statute of repose is tolled because Cyanamid concealed that the Orimune vaccine received by Brian did not meet federal regulatory requirements. Even if true, this argument does not help plaintiffs. Cyanamid's failure to disclose its failure to meet regulatory requirements did not prevent Craven from being put on notice of a claim against Cyanamid. Craven knew in 1979 that Brian Stuart was injured and that this injury was related to the ingestion of Orimune. As Judge Cote noted, "thirteen or fourteen" doctors advised her in 1979 that Brian's condition was related to the ingestion of Orimune. Moreover, that same year an attorney advised her that she "had a case." Because Craven had sufficient information to put her on notice of a claim in 1979, she cannot rely on the doctrine of fraudulent concealment to toll the statute of repose.
 
 
 29
 Craven's argument that Cyanamid "conceded" that the fraudulent concealment tolled the statute of repose is also without merit. Craven asserts that when Cyanamid conceded, for the purpose of the summary judgment motion, that the facts in the Craven/Stuart/Kairdolf complaint were true, Cyanamid also conceded the complaint's legal conclusion that Cyanamid's fraudulent concealment tolled the statute of repose. We disagree. We read Cyanamid's "concession" to be nothing more than an acknowledgment that, for purposes of the summary judgment motion, no genuine issues of material fact existed. Cyanamid did not concede the legal conclusions that plaintiffs sought to draw from the undisputed facts.
 
 
 30
 Carven's attempt to toll the Nebraska statute during Brian's infancy is also unavailing. The statute of repose (which was adopted well after the infancy tolling provision was enacted) bars all product liability actions commenced more than ten years after the product's sale "[n]otwithstanding ... [any] other statutory provision to the contrary...." Neb.Rev.Stat. § 25-224(2) (1995). In light of the unambiguous language of the statute, it is clear that the Nebraska legislature did not intend to toll the statute of repose during a claimant's infancy. See 2 Calvin W. Corman, Limitation of Actions § 9.7.2, at 72 (1991) ("Statutes of repose, unlike statutes of limitations, are drafted in absolute terms with the apparent legislative intent to preclude all forms of postponement of the accrual date of the cause of action.").
 
 
 31
 Finally, Craven's attempt to recast her cause of action as one for breach of express warranty under U.C.C. § 2-725 (which is specifically exempted from Nebraska's statute of repose) also fails. Section 2-725 provides that "[a]n action for breach of any contract for sale must be commenced within four years after the cause of action has accrued." Neb.Rev.Stat. U.C.C. § 2-725 (1993). A cause of action accrues "when tender of delivery is made." Id.
 
 
 32
 Whether the action is governed by Nebraska's product liability statutes of limitations and repose, or the U.C.C. statute of limitations, "is determined by the nature of the complaint, not the form of the pleadings, and consideration must be given to the facts which constitute the cause of action." Thomas v. Countryside of Hastings, Inc., 246 Neb. 907, 524 N.W.2d 311, 313 (Neb.1994) (citing Lincoln Grain v. Coopers & Lybrand, 216 Neb. 433, 345 N.W.2d 300 (1984)); see Fritchie, 931 F.Supp. at 672 (U.C.C. 2-725 does not apply "[w]here the claims are pre-dominantly tort-like in nature, ... rather than principally contractual in nature" (citation omitted)). Professors Summers and White suggest that courts facing this inquiry typically examine "the nature of the injury, the language of the complaint, and whether the parties are in privity of contract." 1 James White & Robert Summers, Uniform Commercial Code § 11-9, at 606 (4th ed.1995).
 
 
 33
 We agree with Judge Cote that Craven's claims are predominantly tortious in nature and are therefore governed by Nebraska's product liability statute. First, Craven seeks both compensatory and punitive damages for Brian's physical injuries, pain, and suffering. Personal injury damages, especially punitive damages, suggest more tort than contract. See, e.g., Follette v. Wal-Mart Stores, 41 F.3d 1234, 1236 (8th Cir.1994). Moreover, Brian Stuart and Craven were not in privity with Cyanamid since Brian received the vaccine from his doctor, not Cyanamid. The absence of a direct contractual relationship between Cyanamid and the claimants further compels the conclusion that the product liability statute applies. See Fritchie, 931 F.Supp. at 672; see also Pirri v. Toledo Scale Corp., 619 A.2d 429, 431 (R.I.1993).
 
 
 34
 We find additional support in Nebraska's broad definition of product liability actions. The Nebraska legislature defined product liability actions to encompass:
 
 
 35
 any action brought against a manufacturer, seller or lessor of a product, regardless of the substantive legal theory or theories upon which the action is brought, for or on account of personal injury, death, or property damage caused by or resulting from the manufacture, construction, design, formulation, installation, preparation, assembly, testing, packaging, or labeling of any product, or the failure to warn or protect against a danger, or hazard, in the use, misuse, or intended use of any product, or the failure to provide proper instructions for the use of any product.
 
 
 36
 Neb.Rev.Stat. § 25-21, 180 (1995). Because Craven seeks "personal injury" damages due to Cyanamid's faulty "manufacture," "preparation," and "testing" of Orimune, her claims constitute a "product liability" action subject to Nebraska's statute of repose. See Follette, 41 F.3d at 1236 (breadth of Arkansas' product liability statute mandated application of product liability statute of limitations, rather than U.C.C. limitations period).
 
 
 37
 Since Craven's claims are barred by the Nebraska statute of repose, the law of the state where the cause of action accrued, the action is time-barred in a New York federal court sitting in diversity. See N.Y.C.P.L.R. § 202 (McKinney 1990).
 
 C. The Kairdolf's Claims
 1. Louisiana Laws of Prescription
 
 38
 The parties agreed below, and do not challenge on appeal, that Louisiana's laws of prescription (i.e., statutes of limitations) govern the Kairdolfs' claims under C.P.L.R. § 202.2. Timeliness of the Kairdolf action
 
 
 39
 The Kairdolfs assert that Judge Cote erred when she dismissed their claims because: (1) Louisiana rules of prescription do not apply where the causal relationship between the product and the injury is not immediately discoverable; and (2) they have an independent cause of action under "redhibition." They are wrong.
 
 
 40
 Louisiana's "delictual" or tort prescription period bars actions brought more than one year from "the day injury or damage is sustained." La.Civ.Code Ann. art. 3492 (1988). The one-year period begins to run when the plaintiff "has a reasonable basis to pursue a claim against a specific defendant." Jordan v. Employee Transfer Corp., 509 So.2d 420, 423-24 (La.1987). Where "allegations of medical causation are vital to the cause of action," prescription does not run until plaintiff has "actual or constructive notice of the causal connection between the medical treatment and the subsequent condition." Sharkey v. Sterling Drug, Inc., 600 So.2d 701, 713 (La.Ct.App.1992) (citations omitted). Such "constructive knowledge" exists when plaintiff has "sufficient information to incite curiosity, to excite attention, or to put a reasonably minded person on guard and call for inquiry." Gassen v. East Jefferson Gen. Hosp., 687 So.2d 120, 124 (La.Ct.App.1996) (citing White v. Willis-Knighton Med. Ctr., 632 So.2d 1198, 1199 (La.Ct.App.1994)).
 
 
 41
 Judge Cote properly found that the Kairdolfs had notice of the causal connection between Cyanamid's vaccine and Michella's polio no later than March 1987. In 1991, acting on behalf of Michella, the Kairdolfs filed a petition for relief under the VCA. The Kairdolfs submitted an affidavit to the United States Court of Claims, swearing that "Dr. Bennett diagnosed Michella as suffering from post-polio reaction to the OPV given her at the age of two (2) months. This diagnosis was made on March 17, 1987." Therefore, it is clear that the Kairdolfs knew the cause of Michella's injury in March 1987. Accordingly, the one-year prescription period expired in March 1988, seven years before the Kairdolfs commenced this action.
 
 
 42
 Nor can the Kairdolfs survive summary judgment by recasting their claim as one for "redhibition." "Redhibition is the avoidance of a sale on account of some vice or defect of the thing sold, rendering it either absolutely useless, or its use so inconvenient and imperfect that it must be supposed that the buyer would not have purchased it, had he known of the vice." La.Civ.Code Ann. art. 2520 (1985). "In a suit for redhibition, the plaintiff must prove: (1) the seller sold the thing to him and it is either absolutely useless for its intended purpose or its use is so inconvenient or imperfect that, judged by the reasonable person standard, had he known of the defect, he would never have purchased it; (2) the thing contained a non-apparent defect at the time of sale; and (3) the seller was given an opportunity to repair the defect." Jackson v. Slidell Nissan, 693 So.2d 1257, 1262 (La.Ct.App.1997) (citing Vincent v. Hyundai Corp., 633 So.2d 240, 243 (La.Ct.App.1993), writ denied, 634 So.2d 832 (La.1994)). There are several problems with plaintiffs' attempt to invoke the Roman Law doctrine of redhibition.
 
 
 43
 First of all, the ingestion of Orimune was not a "sale" under the redhibition statute. A "sale" is "a contract whereby a person transfers ownership of a thing to another for a price in money." La.Civ.Code Ann. art. 2439 (1985). The medical administration of Orimune to Michella by her doctor cannot fairly be considered a "sale" under Louisiana law. See Martin v. Earl J. Rome, Jr., D.D.S., 486 So.2d 213, 215-16 (La.Ct.App.1986).
 
 
 44
 Moreover, even if the Kairdolfs could cobble together some kind of redhibition claim, the claim would still be untimely. Claims in redhibition have various prescriptive periods, depending on whether the seller was aware of the defect at the time of sale. Pursuant to La.Civ.Code Ann. art. 2534 (1985), the time limit on an action for redhibition depends upon what the seller, not the buyer, knew. An action for redhibition against a seller who did not know of the defect's existence must be commenced within one year from the date of delivery to the buyer. Id. art. 2534 A. However, if the seller knew, or if he is presumed to have known, of the defect, the action for redhibition must be commenced within one year from the day the defect was discovered by the buyer. Id. art. 2534 B. When the seller is a manufacturer, it is conclusively presumed to have known of a defect in the product it produced. La.Civ.Code Ann. art. 2545 (1985); Alexander v. Burroughs Corp., 359 So.2d 607, 609 (La.1978). Since Cyanamid is thus presumed to have known of Orimune's defect at the time of sale, the Kairdolfs had to commence their action within one year after they discovered that Orimune was defective.
 
 
 45
 A buyer discovers a defect, and the prescription begins to run, when there is sufficient notice to call for inquiry about a claim. See Maison Blanche, Inc. v. Louisiana Dep't of Labor, Office of Employment Sec., 604 So.2d 670, 674 (La.Ct.App.), writ denied, 608 So.2d 178 (La.1992). The Kairdolfs became aware of Orimune's defect in 1987 when Michella was diagnosed as having vaccine-induced polio. At that time, the Kairdolfs knew the extent of Michella's injury and that the injury was caused by her ingestion of Orimune. Thus, the one-year prescriptive period expired in 1988, well before the Kairdolfs commenced this litigation in 1993.
 
 
 46
 The Kairdolfs contend that it was only in 1993, when the United States Court of Appeals for the Fourth Circuit held that Orimune violated federal regulations, that they had any reason to suspect that Orimune was defective. This argument is unpersuasive. The prescriptive period for a redhibition action begins to run from the date that the defect is manifest, not from when the plaintiff discovers the actual cause of the defect. See Beth Israel v. Bartley, Inc., 579 So.2d 1066, 1073 (La.Ct.App.1991); Lee v. Equitable Life Assurance Soc'y of U.S., 391 So.2d 37, 39 (La.Ct.App.), writ denied, 395 So.2d 1363 (La.1981).
 
 
 47
 Since the Kairdolfs' claims are barred under Louisiana law, the state where their cause of action accrued, they are also time-barred in a New York federal court sitting in diversity. See N.Y.C.P.L.R. § 202 (McKinney 1990).
 
 CONCLUSION
 
 48
 We have considered all the arguments raised by appellants and find them to be without merit. Accordingly, the judgment of the district court is AFFIRMED.